### Nichols *against* Turney.

In construing the description of the premises in a deed, effect is to be given to all parts of the description, as far as practicable; then known and fixed monuments will controul courses and distances; and metes and bounds will con-

Nichols
*v.*
Turney.

troul quantity, unless the deed shows a clear intent to give only a definite quantity.

Therefore, where the grantor described the premises as containing 18¾ acres, bounded *North,* by land of *B, C, D* and *E ; East,* by a line due *North* and *South ; South,* by land of *J* and *E ;* and *West,* by land of *E ;* it was held, 1. that the grant extended to a *North* and *South* line, as far *East* as the land of *E* on the *Northern* boundary, although that line would give more land than the quantity specified, and would strike a point in the *Southern* boundary, farther *East* than any part of the land of *J ;* but 2. that the grant did not, of course, extend as far *East* as the *Eastern* line of *E's* land.

Where the grantor executed two deeds of different parcels of a tract of land to *Y* and *Z,* which, though dated on different days, that to *Y* being first, were delivered simultaneously ; the deed to *Y* described the premises as bounded on the *East,* by a line due *North* and *South ;* and the deed to *Z* described the premises as being *East* of the *North* and *South* division line of the parcel deeded to *Y ;* several lines were specified by the parties, as being this line, *Y* contending for the most *Easterly,* and *Z* for the most *Westerly* one ; and from the descriptions in both deeds it was doubtful which was the line intended ; the judge, on the trial, left this question to the jury to be decided by them upon the evidence ; and the jury having found it to be the most *Western,* this court, considering that this line would answer all the calls of *Y's* deed, and give him more than the quantity specified, though it would carry *Z* to a boundary on the *South* farther *West* than that mentioned in his deed, and give him more than the quantity specified with the addition of " more or less," refused to set aside the verdict.

Where a paper, purporting to be a map or survey of a tract of land embracing the land in controversy, found among the papers of a former owner of that tract, after his decease, was offered in evidence, to shew the boundary line on one side, accompanied by the testimony of a witness that such former owner, in his life-time. declared it to be a plan of the land in controversy ; it was held, that such evidence was admissible.

Where the declarations of the grantor were offered to shew, that a *North* and *South* line specified in the decree, was not any known or existing line, but was mentioned merely to mark the quantity ; it was held, that such declarations were admissible, not to controul any boundary or other thing unequivocally stated in the deed, but merely to explain any ambiguity arising from extrinsic testimony, not apparent on the face of the deed.

But where the witness called to prove such declarations, testified only, that he drew the deeds, by direction of the grantor, and that the *North* and *South* line was not mentioned by him as any known or existing line, but merely to mark the quantity ; it was held, that this was a mere inference of the witness from the silence of the grantor, not proper to be submitted to the jury.

But such evidence, not having been objected to, on the trial, on that ground ; it was held, that its admission was not a ground for a new trial.

THIS was an action of trespass *qu. cl. fr.* The *locus in quo* was thus described in the declaration : " A certain piece or tract of land in *Trumbull,* at a place called *Shag,* in quantity 7 acres, 1 rood and 29 rods, bounded *North,* by *George L. Sherman* in part, in part by the *Picket* tract, so called, in

part by the plaintiff's own land, and in part by *Elias Y. Hawley's* and *William Curtiss'* land ; *East*, by land of *John Olmsted ; South*, by *John Olmsted* and *Benjamin Bennett ;* and *West*, by a due *North* and *South* line of the *Nichols* tract, (so called.)"

*Fairfield,*
*June, 1842.*

Nichols
*v.*
Turney.

The cause was tried at *Fairfield, February* term, 1842, before *Sherman*, J.

The land upon which the trespass was committed, was formerly the property, by an undisputed title, of *Nathaniel Sherman*, now deceased ; and both parties claimed under titles derived from deeds given by him.   The plaintiff claimed under a deed from him, dated 3rd of *August*, 1838, to *Robert Turney* and his wife *Betsey-Ann.*   The defendant justified under a deed from *Nathaniel Sherman*, dated 31st of *July*, 1838, to *Read* and *Henry Turney*, in which a life estate was reserved to the grantor's daughter, *Jerusha Turney.*   Both deeds were deposited with *David Hawley*, with directions to deliver them to the grantees respectively, on the death of the grantor ; which was done simultaneously.   The lands conveyed in these two deeds formed one tract ; a part of which, called the common land, the grantor had purchased of one *French ;* and the other part, called the *Nichols* land, he purchased afterwards of *Hezekiah Nichols.*

The whole tract was bounded as follows, beginning at the *West :* " On the *North*, by highway, by land of *Lauzon W. Clark*, of *William Curtiss*, of *Elias Y. Hawley*, of *Elisha Sherman*, by the *Picket* tract, and by land of *George L. Sherman ;* on the *East*, by an elm stump and land of *John Olmsted ;* on the *South*, by land of said *Olmsted*, of *Benjamin Bennett*, of *Ephraim Lane* and of *Elisha Sherman ;* and on the *West*, by highway."   The deed under which the plaintiff claimed, described the land as follows : " A part of the common land, lying *South* of the old *Picket* tract, and *East* of the *North* and *South* division line of the tract deeded to my daughter *Jerusha* and her heirs, containing four and a half acres, more or less ; bounded *North*, by land of *George L. Sherman* and the old *Picket* tract ; *East*, by the elm stump and land of *John Olmsted ; South*, by land of said *John Olmsted ;* and *West*, by the due *North* and *South* line of the *Nichols* tract, deeded to *Jerusha Turney* and her heirs."   The deed under which the defendant justified, described the land

conveyed, as " containing 18¾ acres ; bounded *North* by land of *Lauzon W. Clark, Elias Y. Hawley, William Curtiss* and *Elisha Sherman ; East,* by a line due *North* and *South ; South,* by land of *Elisha Sherman* and *Ephraim Lane ;* and *West,* by *Elisha Sherman.*"

The *Nichols* land formed the *Western* part of the whole tract, and the common land, the *Eastern ;* and the question was, which deed covered the land, on which the trespass was committed. If the plaintiff was confined to 4½ acres, that deed would not extend so far *West* as to this point ; and if the deed under which the defendant justified, covered but 18¾ acres, that tract would not extend *East* far enough to embrace it.

The defendant claimed, that the *Western* line of the *Picket* tract, running *Northward* from the whole tract, was a due *North* and *South* line, well known by *Nathaniel Sherman,* the grantor, and his family, and always called " the *North* and *South* line ;" and that a continuation of this line across said tract, was the *North* and *South* line described in said deed to *Read* and *Henry Turney ;* and that a continuation of this line across said tract, as it would give *Robert* and *Betsey-Ann Turney* only a part of the common land, was the *Eastern* boundary of *Read* and *Henry's* land : and if so, it was agreed, the case was with the defendant.

It was also claimed by the defendant, that the common land extended a considerable distance *Westerly* of the *Picket* tract, to a ledge of rocks, called the " *Fox* rocks," and no further ; and that all *West* of that ledge was the *Nichols* land. It was shown, that *Olmsted's* land, named as the *South* boundary in *Robert* and *Betsey-Ann's* deed, extended so far *West* only, that a line drawn *North* from its *Western* extremity, would pass a little *East* of the *Fox* rocks, and strike *Elisha Sherman's* land on the *North ;* and the defendant claimed, that, if the *Picket* line was not the true line, this was the line.

The line separating the common land from the *Nichols* land, was called " the *Nichols* line ;" and the defendant claimed, that it ran along said ledge of rocks, and thus left the land in dispute covered by the deed to *Read* and *Henry Turney.* The plaintiff claimed, that this line ran farther *West,* and from

a part of the *Hawley* land, and formed what is here called "the *Hawley* line." (*a*)

*Fairfield*, June, 1842.

Nichols
*v.*
Turney.

The plaintiff also claimed, that the deed to *Read* and *Henry Turney* conveyed 18¾ acres, and no more ; so that their *East* boundary would not extend to the *Hawley* line, leaving the defendant bounded *North,* by *Clark* only.

The defendant claimed, that his *North* line must extend *East,* not only to *Clark's* land, but to *Curtiss', Hawley's* and *Elisha Sherman's,* although it would give more than 18¾ acres in quantity.

The plaintiff further claimed, that if it was not to be limited by the quantity, it should run as little upon *Elisha Sherman's* as possibly would satisfy the words of the deed, so as not to enlarge the quantity further than was necessary to satisfy those words. On the other hand, it was claimed, that it should extend the whole distance, by the land of *Elisha Sherman,* to the *Picket* tract.

The plaintiff also contended, that both deeds must be taken together ; and that the due *North* and *South* line, spoken of, must be taken to be also the *Eastern* line of the

(*a*) The following diagram, with the explanations subjoined, may give the reader a more distinct conception of the subject of controversy, than he would otherwise obtain.

A Highway.
B *Clark's* land.
C *Curtiss'* do.
D *Hawley's* do.
E *E. Sherman's* do.
F *G. L. Sherman's* do.
G Elm Stump.
H *Olmsted's* land.
I *Bennett's* do.
J *Lane's* do.
P *Picket* tract.

*a Locus in quo.*
*b* Fox rocks.
*c c Eastern* boundary of 18¾ acres.
*d d Hawley* line.
*e e Western* line of common land, as claimed by defendant.
*f f Olmsted* line.
*g g* Line claimed by defendant.
*p p North* and *South* line of the *Picket* tract.

*Nichols* tract; which, he claimed, was *West* of the *Hawley* line.

The court charged the jury as follows: "The defendant claims, that the *locus in quo* is a part of the land conveyed to *Read* and *Henry Turney*, under whom he justifies. The plaintiff contends, that it is part of the land which was conveyed in the deed given to *Robert* and *Betsey-Ann Turney*, of which, it is admitted, he is the owner. The great question to be settled, therefore, is, whether the line which divides these lands, is on the *East* or *West* of the place where the acts charged in the declaration were done.

"In the discussion of the case, frequent reference has been had to a line called 'the *Hawley* line.' That is an imaginary line, drawn from a point near the *Western* end of the boundary of *Elisha Sherman's* land on the *North*, which takes the least portion of that boundary which can satisfy the requisitions of the deed. The defendant contends, that the dividing boundary in question, is *East* of that line; and he has specified several lines, on the *East* of it, contending for the most *Easterly* to which he can establish his claim. He claims, that this deed designates the line called the *Picket* line, by the words, 'a line due *North* and *South*;' that line being, as he contends, a due *North* and *South* line, which had acquired the name of 'the *North* and *South* line,' and was commonly known by that name, and was intended as the *Eastern* boundary. That is a question for you to decide upon the evidence. If you find, upon all the evidence relating to that and the other lines claimed, that the *Picket* line is designated in the deed as the *Eastern* boundary, you will adopt it; for it consists with all the other boundaries in the deed under which the defendant justifies; for although the quantity of $18\frac{3}{4}$ acres would not extend to that line, yet where a definite boundary is given in a deed, it over-rules the designation by quantity, being in law considered as more certain.

"Another line claimed by the defendant, is that which divides the *Nichols* land from the common land, called 'the *Nichols* line.' This is not as far *East* as the *Picket* line; but the defendant insists, that it is *East* of the *Hawley* line.

"The plaintiff also claims the *Nichols* line is the true boundary, if the $18\frac{3}{4}$ acres is not the standard by which that boundary is to be settled; but contends, that it is *West* of the

*Hawley* line. Much evidence regarding its location has been heard from each party. If you find, that the *Nichols* line is *East* of the *Hawley* line, you must adopt it, as matter of law; for the two deeds being simultaneously delivered, are, for the purpose of construction, to be taken as one. But if they cannot be reconciled, that of older date must prevail. It is admitted, that the deed to *Read* and *Henry Turney* was made and executed first. The deed under which the plaintiff claims, in describing the land thereby conveyed, bounds it on the *West*, as follows: ' *West*, by the due *North* and *South* line of the *Nichols* tract, deeded to my daughter *Jerusha Turney* and her heirs.' It is admitted, that this claim relates to the deed of *Read* and *Henry Turney*, in which a life estate is reserved to *Jerusha*. This is a plain declaration that the due *North* and *South* line, after which we are inquiring, is the *Nichols* line. This description will prevail, unless it is inconsistent with the express boundaries of the other deed. If, therefore, you find the *Nichols* line *East* of the *Hawley* line, you must adopt it; but if you find it *West* of the *Hawley* line, you must reject it; because, if there, it excludes the boundary upon *Elisha Sherman* on the *North*, as expressly stated in the older deed.

" If you do not adopt any line *East* of the *Hawley* line, then, on the legal construction of the deeds, the true line, as matter of law, is the *Hawley* line. Although the quantity intended to be conveyed to *Read* and *Henry Turney*, according to the express terms of the deed, was $18\frac{3}{4}$ acres only, the *Sherman* boundary on the *North*, obliges us to over-rule this intention. But the law requires, that we should not depart farther from it, than is necessary to meet the boundaries expressed in the first deed; and therefore, upon this principle, adopts the *Hawley* line, if there is none proved and established further *East*."

The jury returned a verdict for the plaintiff, finding the *Hawley* line to be the true *North* and *South* line, by which the lands in controversy were divided.

In the course of the trial, the plaintiff introduced *David Hawley*, as a witness, who testified, that he drew both the deeds for *Nathaniel Sherman*, and by his direction; and that said *North* and *South* line was not named by him as any known or existing line, but merely to make the quantity. To

the admission of this testimony the defendant objected; but the court admitted it, explaining to the jury, that it was not evidence to controul any boundary or other matter unequivocally stated in the deed, but only to be weighed with other evidence to aid in explaining ambiguities not apparent on the face of the deed, and arising from extrinsic testimony.

The plaintiff also, for the purpose of shewing, that the *West* line of the common land was further *West* than the line called the *Hawley* line, offered an old map or survey, purporting to be a survey of said common land, and with it the testimony of *Gideon Mallett*, stating, that he was son-in-law of *Nathaniel Sherman;* that the survey was found among his papers, after his death; and that, in his life-time, he shewed it to the witness, and said it was a plan of his common land. The defendant objected to the admission of this document in evidence; but the court admitted it.

The defendant moved for a new trial, on the ground that the court did not instruct the jury in pursuance of his claim, and also on the ground that the evidence which he objected to, was not excluded. The plaintiff also moved for a new trial, because the court did not charge the jury in the manner requested by him.

*Hawley* and *Booth*, in support of the defendant's motion.

*Bissell* and *Dutton*, contra.

WILLIAMS, Ch. J.   The first inquiry will be upon the plaintiff's motion, whether the quantity mentioned in the deed to *Read* and *Henry Turney* shall controul. The rule on this subject is well settled; that as known and fixed monuments will controul courses and distances, so the certainty of metes and bounds will include the lands within them, though the quantity vary from that expressed in the deed. *Belden v. Seymour*, 8 *Conn. Rep.* 25. *Greenl. Ev.* 350. Where the whole deed shows, that it was clearly the intent to give only a definite quantity, it might be otherwise. Is there shown such an intent here? It is certainly singular, that in one of these two deeds, the precise quantity, to the parts of an acre, should be given, and in the other, it should be given with the addition of " more or less." But when we look further, and

*Fairfield,*
June, 1842.

Nichols
*v.*
Turney.

see how particular the grantor has been, to name, on one side, some adjoining proprietors, all of which was entirely unnecessary, as he gives the boundaries on the *West* and *East*, it seems that the principles of law, which require that we give effect to all the description in the deed, so far as we can, and that we regard boundaries rather than quantities, must lead to the conclusion, that the grantor must have intended the line should run as far *East* as *Elisha Sherman's* land. It is true, that on the *South*, the bounds given would not extend so far *East;* but as the *East* line is to be a *North* and *South* line, that cannot alter the case. We do not, therefore, think, that there is such clear evidence of intent, that the grantee should have no more than $18\frac{3}{4}$ acres, that we are authorized to depart from the ordinary rule of construction. We therefore do not grant a new trial, upon the motion of the plaintiff.

The defendant, however, contends, that the true *East* line is the *Picket* line, and that the jury should have been so instructed. There is nothing in the deed to *Read* and *Henry Turney*, which shows this, unless we are to assume that, as their land is bounded on the *North*, by *Elisha Sherman*, it must, of course, stretch *East* as far as *Elisha Sherman's* land; which certainly cannot be admitted.

But the defendant says, both deeds must be taken together, in the construction to be given to them; and that the plaintiff's deed describes his land as lying *South* of the old *Picket* tract, and bounded *North* by that tract, and by *George L. Sherman*, and *West* on land of *Read* and *Henry Turney*. This is certainly evidence tending to show, that the *Western* boundary of the plaintiff is not *West* of the *Picket* tract. On the other hand, as that construction will give the plaintiff a large quantity of land, probably one quarter more than his deed imports, and will extend his line on the *South*, beyond the boundaries mentioned in his deed, it leaves it at least extremely doubtful what was intended. Clear it is, the court could not settle it, as a question of law; and therefore, very properly left it to the jury. The plaintiff's deed covers a part of the common land, and is bounded, *West* by the due *North* and *South* line of the *Nichols* tract. The plaintiff claims, that if the quantity in the defendant's deed, is not to govern, then the line of the *Nichols* tract is his *Western* boundary; and

HARVARD LAW LIBRARY

the court told the jury, that if they did not adopt the *Picket* line, and found the line of the *Nichols* tract *East* of the *Hawley* line, that must be the true line. And what that *Nichols* line is, was also submitted very properly to the jury, for them to settle. Another line was also submitted, by the defendant, called the *Olmsted* line, drawn from the *East* end of the *Bennett* land, *North* to land of *Elisha Sherman*, which, he supposed, would give to the plaintiff all the land conveyed by his deed, bounding him by *Olmsted*, on the *South*, to *Bennett's* land. And this, too, would leave to the defendant the boundary given in the deed to *Read* and *Henry Turney*, except that it would give them *Bennett's* land on the *South* as part of the boundary.

The plaintiff, on his part, claimed, that the *Hawley* line must be the defendant's *Eastern* boundary, which, including the smallest quantity of land of *Elisha Sherman's* on the *North*, would give him all the bounds mentioned in his deed on the *North*, and all on the *South*, answering all the calls of his deed, and granting him more land than the 18¾ acres. And the jury were charged according to this claim of the plaintiff, if they did not adopt some of the other lines claimed by the defendant. Of this, the defendant complains ; but, we think, without reason. He is bounded *North*, on highway and land of *Clark*, land of *Curtiss*, of *Hawley* and of *Elisha Sherman* ; on the *South*, by *Elisha Sherman* and *Ephraim Lane*. Of what, then, has he to complain ? It is true, on the *North*, his bounds on *Elisha Sherman* are as small as they can be ; but they are enough to satisfy all the calls of the deed, and give him more than his quantity of land. We do not see, then, but entire justice is done to those who claim under that deed ; and the rules of law are complied with. It is true, the plaintiff will reach a boundary on the *South*, not mentioned in his deed, and gain more land than is specified ; but as the quantity is *more or less*, and the deed bears date after the other, and as the calls in both deeds cannot be met, it seems more completely to carry into effect the object of the grantor, as well as the principles of law, to adopt this construction, than that demanded by the defendant. We are satisfied, therefore, that the charge was correct.

The defendant also objected to the admission in evidence of a map found among the papers of the grantor, after his

death, and proved to be, (as he said,) a map of his common land. That a map of this tract, would tend to throw some light upon these disputed bounds, has not been denied. Was this map, then, authenticated in such a manner, as made its admission proper? It is found among the papers of one, who had, for a long time, owned this common land; and during his life, was shown, by the deceased, as a representation of the premises. Now, in *England*, surveys of manors may be given in evidence to ascertain boundaries. *Bul. N. P.* 248. This may not be as accurate, or entitled to the same weight; but when the owner of the land recognizes it, and preserves it as truly describing the premises, it seems to us, it must be evidence of that fact, were he the party, in the same manner as a recognition of boundaries might be. *Higley* v. *Bidwell* & al. 9 *Conn. Rep.* 445. 451. Or a recognition of title in another. *Davies* v. *Pierce* & al. 2 *Term Rep.* 53. 55. *Jackson* d. *Van Deusen* & al. v. *Scissam*, 3 *Johns. Rep.* 499. 504. And those who claim under his grants, must stand upon the same ground as he himself would. It has been decided, that if *I. S.* be seised of the manor of *A* and *B*, and he cause a survey to be taken of *B*, and afterwards conveys it to *J. N.*, and disputes arise between the lords of the two manors, concerning the boundaries, this survey may be given in evidence. *Bridgman* v. *Jennings*, 1 *Ld. Ray.* 734. *Bul. N. P.* 283. His acts and declarations must be as binding upon those in privity of estate with him, as upon himself. *Hewlett* v. *Cock*, 7 *Wend.* 371. 376.

The testimony of *David Hawley*, the person who drew the deeds, was also objected to, by the defendant. He testified, that the *North* and *South* line was not mentioned, by the grantor, as any known or existing line, but merely to mark the quantity.

This evidence was admitted by the court, under an instruction to the jury, that it was not to controul any boundary in the deed or other thing, unequivocally stated, but merely to explain any ambiguity arising from extrinsic testimony, not apparent on the face of the deed. Was this correct? We fully agree with all that has been said as to the danger of parol evidence—particularly, arising from supposed declarations in adding to or explaining written instruments. And while extrinsic circumstances are constantly admitted to ex-

plain and give a different import to a will, from that which it would seem to demand, the language of the testator, tending to explain his meaning, is carefully excluded ; and where the description of the person or thing is wholly inapplicable to the subject intended, or said to be intended, by it, evidence of his declarations of intention are wholly inadmissible. *Greenl. Ev.* 328. 332, 3. The importance of this rule to prevent a substitution of oral for written wills, we fully appreciate. But on the other hand, where the meaning of the testator's words is neither ambiguous nor obscure, and where the devise is intelligible, but from circumstances admitted in proof an ambiguity is created, as to which of the two or more things, or two or more persons, each answering the words of the will, the testator intended to express, creating thereby what Lord *Bacon* calls an *equivocation ;* there evidence of previous intention may be received, to solve this latent ambiguity. *Hiscocks* v. *Hiscocks*, 5 *M. & W.* 363. 367. *Greenl. Ev.* 328. & seq. *s.* 289. For that purpose alone was it introduced, in this case. Here the defendant claimed, that the *Western* line of the *Picket* tract, was a due *North* and *South* line, well known and regarded as such, by the grantor and his family, and always called the *North* and *South* line ; thus claiming to show, by parol proof, that the *Picket* line must have been intended, by the grantor, as the line described by the expression " the *North* and *South* line." What particular testimony was offered to show this fact, is not stated ; but it was parol. And the testimony was introduced to raise a presumption, that by the description "*North* and *South* line," the *Picket* line was intended. And now, to repel this presumption, and to show that this was not so intended, the plaintiff offered the testimony in question. And while the defendant admits, that parol evidence may be admitted to meet his evidence, he says, it must be of the same character ; and therefore, parol declarations are not admissible. No case was cited in support of this distinction, but the language of *Powell*, in *Peake's Ev.* Do the authorities support this distinction ? Where an estate is given to a person of a particular name, and it is proved, that there are two persons of that name, it was long since settled, in the case of a will, that the party claiming, may aver and prove which was meant. *Jones* **v.** *Newman,* 1 *W. Bla. Rep.* 60. And it has been settled, by

*Fairfield,*
June, 1842.

Nichols
*v.*
Turney.

this court, that the same principle applies to a deed. *Coit* v. *Starkweather,* 8 *Conn. Rep.* 290. But how may this be done? Let us hear the ancient law upon this subject, as reported by a great authority. If a man has two sons named *John,* and conceiving the elder, who has been long absent, is dead, devises his land, by will in writing, to his son *John* generally, and in truth the elder is living; in this case, the younger may, in *pleading* or in *evidence,* allege the devise to him ; and if it be denied, he may produce witnesses to prove his father's intent, that he thought the other son to be dead, or that he, at the time of the will made, named his son, *John,* the younger, and the writer left out the addition of the younger. And he concludes, that for want of proof of such intent, the will is void. Lord *Cheyney's* case, 5 *Co.* 68. And in a modern case of high authority, Ld. Ch. B. *Abinger,* after stating where declarations had been admitted, says : " Now, there is but one case, in which it appears to us that this sort of evidence of intention can properly be admitted ; and that is, where the meaning of the testator's words, are neither ambiguous nor obscure, and where the devise is, on its face, perfectly intelligible ; but from some of the circumstances admitted in proof, an ambiguity arises, as to which of the two or more things, or the two or more persons, each answering the words of the will, the testator intended to express." *Hiscocks* v. *Hiscocks,* 5 *M. & W.* 363. 367. *Greenl. Ev.* 330. And on this subject, the rules of interpretation are the same in deeds and in wills. *Pow. Dev.* 488. The object, in both cases, is to discover the intention of the grantor or devisor. *Greenl. Ev.* 325. *s.* 287.

In the case before us, there is no doubt what is meant by a *North* and *South* line. The defendant attempts to show, that it means the *North* and *South* line, called the *Picket* line ; and to meet this is the evidence of *Hawley* offered. The true principle of parol averments is, that nothing can be put into a will, by averment or parol evidence, that does not previously stand there ; but any light may be thrown upon what stands there, by averments of all distinct facts that stand well with, and have their existence independent of, the effect or non-effect of the will. *Pow. Dev.* 521. And such we understand to be the principle of Lord *Cheyney's* case.

When, then, the defendant introduced the evidence of the *Picket* line, a fact entirely extrinsic from the deed, it seems

to follow, by the authorities, that the other party might be permitted to show, that the grantor did not intend that line. In doing this, he does not alter the deed, nor even explain it ; but he thereby counteracts or removes the effect of circumstances, which had been introduced to explain it, or alter the construction.   It is, in short, to leave the deed to stand just as if those circumstances had not been introduced.   The parol evidence, then, does not affect the written instrument, but prevents the effect of extrinsic facts upon that instrument.

Such a construction is also analogous to other cases.   Thus, parol declarations are admissible to rebut the constructive declarations of a trust, put on words contrary to their legal sense, which is rebutting in equity ; for in such cases, the estate is in the devisee, and the averment is in support of the letter of the will.   *Pow. Dev.* 525.   As where a legacy is given to an executor, the law implies, that the residuum shall go to the next of kin.   But parol declarations of the testator to the contrary, are admissible.   *Lake* v. *Lake*, 1 *Wils.* 313.   And *Buller*, J. says, such declarations are always admissible to rebut, but not to raise, an equity.   2 *East* 534. n. (*a.*)   And all presumptions, says Lord *Mansfield*, may be rebutted, by parol proof.   *Brady* v. *Cubitt, Doug.* 39.   It is true, that the ground upon which this case was decided, has since been held to be untenable ; it being now holden, that the revocation of a will, by marriage and the birth of a child, does not depend upon the intention of the devisor.   But the learned judge, while he decides *that*, also recognizes the doctrine above alluded to, that a presumption arising from a supposed intention, may be rebutted, by parol declarations ; for he says : " It is a question whether such revocation shall be allowed to depend upon evidence of intention, that is, upon evidence of which parol declarations of the testator may confessedly form a part."   And his whole reasoning goes to show, that if parol testimony is admissible, it must be composed, in whole or in part, of declarations of the testator. *Marston* v. *Roe* d. *Fox* & al. 8 *Ad. & Ellis* 14. (35 *E. C. L.* 324, 5.)   And in such cases, the practice is in accordance with this principle.   Ld. *Walpole* v. Ld. *Cholmondeley*, 7 *Term Rep.* 138.   *Thomas* d. *Evans* & al. v. *Thomas*, 6 *Term Rep.* 671.   And such averments stand well with the will.   *Stiles*

293. Such evidence, however, must be confined to what will bear upon his intention at the time. *Whitaker* v. *Tatham*, 7 *Bing*. 628. (20 *E. C. L.* 268, 9.) We think, then, that such declarations are admissible.

But upon examining the testimony of *Hawley,* we do not find that he testifies to any such declarations. His testimony seems to be nothing more than his inference arising from the silence of the grantor on the subject of the *Picket* line. And we are clearly of opinion, that his inferences ought not to have been submitted to the jury. But this evidence was not objected to, on that ground. It has not been argued before us, on that ground. Not having been made a point below, it cannot be a ground for a new trial. *Toby* v. *Reed*, 9 *Conn. Rep.* 222. *Picket* v. *Allen*, 10 *Conn. Rep.* 146. In this point of view, we notice it, only that it may not be understood, that, by the decision, we recognize this as legitimate testimony.

The motion for a new trial must be denied.

In this opinion the other Judges concurred.

New trial not to be granted.