KATHLEEN FREDERICKS *v.* RHODA THATCHER
[FREDERICKS]

INGLIS, C. J., BALDWIN, O'SULLIVAN, QUINLAN and WYNNE, Js.

Argued December 1, 1953—decided February 2, 1954

*Louis Feinmark*, with whom was *Irving Smirnoff*, for the appellant (defendant).

*Nathan A. Resnik*, with whom, on the brief, was *Cornelius T. Driscoll*, for the appellee (plaintiff).

WYNNE, J. This is an action for alienation of affections. In it the jury rendered a verdict for the plaintiff. The assignments of error pursued are (1) in the trial court's claimed failure to charge as to the effect of a temporary alienation of affections which had terminated prior to, and was claimed not to have been the effective cause of, the ultimate disruption of the plaintiff's marital status; (2) in the trial court's failure to define specifically the term "wrongful conduct," used in one portion of the charge; and (3) in certain rulings on evidence.

The plaintiff claimed to have proved the following facts: She was married to Earl Fredericks on November 7, 1927. The couple came to New Haven in 1938 or 1939, where he became manager for the Woolworth Company. Thereafter they moved to Hotchkiss Grove, Branford, where they had purchased a home. From the time of their marriage until early in 1947, the plaintiff and her husband were very happy together and he loved and cared for her. His salary at Woolworth's was almost $10,000 a year. A portion of this was used to purchase insurance annuities, the plaintiff being the beneficiary thereon as well as on insurance policies on her husband's life.

A joint bank account was maintained. The plaintiff and her husband owned two automobiles, which they used jointly, and they took frequent trips together. From the time of their marriage until early in 1947, they had many friends and visited with them frequently. Up until 1947 the plaintiff and her husband had no domestic difficulties. The last of March, 1947, she became aware that his attitude toward her had changed. He accused her of spying on him and became angry. He began to go out without telling her where he was going, sometimes returning at 1 or 2 a.m. and at other times not returning all night. He became sarcastic to her. Finally she began to find letters to her husband from the defendant. These were in endearing terms and disclosed that the defendant and the plaintiff's husband were seeing each other at the former's apartment and elsewhere. Because of these letters and the conduct of the plaintiff's husband, the plaintiff suffered great emotional strain, required medical treatment and was advised by her doctor that she or her husband had to leave the home. Her husband left and was gone about three months. During the period from March, 1947, until December, 1949, he used physical violence on the plaintiff and threatened her that someone would die if the letters she had found were ever used. After she learned of her husband's relationship with the defendant, she suffered a nervous reaction and lost twenty pounds. She finally brought a divorce suit against her husband and obtained a decree on November 9, 1950. Less than two weeks later, her former husband and the defendant were married.

It was the defendant's claim that the plaintiff's husband had become seriously affected, mentally and physically, as a result of an automobile accident in December, 1946. She further claimed that sometime

after this accident a relationship grew up between her and the plaintiff's husband. She claimed that this relationship was terminated by a letter she wrote him near the end of 1948 or the first part of 1949. This letter was in evidence, and the defendant argues that it was a letter of renunciation and rejection and claimed that from the time of her writing it, up to the time the plaintiff began her divorce action, there was no communication of any kind between the defendant and the plaintiff's husband.

It is argued that the defendant was entitled to a specific charge bearing on her claim that, if there had been only a temporary alienation which had ceased long before the destruction of the marital life and was not the cause of it, the plaintiff was entitled to damages only for that temporary alienation. The defendant excepted to the failure of the court to deal specifically with this situation. The court charged that, to support a recovery for the plaintiff, the jury must find that the defendant's acts were a controlling factor in causing the alienation proven. It correctly pointed out that it was not necessary for the plaintiff to show a complete and continuing alienation but that she was entitled to recover for such partial alienation as was proven. It called attention to the letters offered in evidence, which included the one relied upon by the defendant as a termination of her relationship with the plaintiff's husband, to the oral testimony concerning the relationship between the plaintiff and her husband up to 1945, and to the events which occurred afterwards, including a serious automobile accident which he suffered and which, it was claimed, affected his attitude towards the plaintiff; and the court told the jury that they must find all the elements involved in an alienation of affections action to have been established by a

fair preponderance of the evidence in order to render a verdict for the plaintiff. The charge was sufficient on this point.

In the discussion of proper elements of damage, the court emphasized the rule of law that the plaintiff was entitled only to such damages as she proved had resulted from the acts of the defendant. The following language was used: "The damages to which the plaintiff would be entitled, however, depend upon the extent to which the defendant is found to have destroyed or impaired [the right of consortium]." Taken as a whole, the charge was certainly sufficient to guide the jury in passing upon the claim of the defendant now being discussed.

At one point in the charge the court said: "In order to hold this defendant liable, her wrongful acts or conduct must have been the procuring or controlling cause of the alienation." The defendant claims that this was erroneous because the court did not define the expression "wrongful acts." The sentence came after a portion of the charge in which the court correctly outlined the various kinds of act which must appear in order to support a claim of alienation of affections. There can be no doubt that the expression "wrongful acts" referred to the former discussion, and the jury must have so understood. There was no error in the charge in this particular.

The final assignment of error has to do with rulings on evidence. There was no basis of harmful error in two rulings having to do with the credibility of a witness. They could have little, if any, bearing on the ultimate issues the jury were called upon to decide. By one other ruling the court excluded, upon the cross-examination of the plaintiff, a question designed to bring out the fact that her affections for her husband at the time she instituted her divorce

action were not as great as it had been made to appear on her direct testimony. The state of her affections at this time was not of any moment. She had become a litigant. The only purpose of the inquiry was to discredit her. It could not bear upon the value of the consortium she had lost, and the exclusion was at most harmless error. The remaining rulings excluded evidence offered to prove the extent of the property holdings of the plaintiff and the defendant, respectively. In an action for alienation of affections the measure of damages is the amount of damage caused to the plaintiff by the alienation. The value of the property of the plaintiff or of the defendant is not relevant to the question of damages. 42 C.J.S. 348, 349.

There is no error.

In this opinion the other judges concurred.