FRANK N. VOGEL *v.* WILLIAM G. SYLVESTER ET AL.

BALDWIN, C. J., KING, MURPHY, SHEA and BORDON, Js.

Argued June 7—decided August 1, 1961

*Robert B. Seidman,* with whom, on the brief, was *Sidney Vogel,* for the appellants (defendants).

*Morgan P. Ames,* for the appellee (plaintiff).

KING, J.   Under the first count, the plaintiff sought damages from the named defendant and his mother for the alienation of the affections of the plaintiff's former wife.   In a second count, against the named defendant only, damages were sought for seduction and criminal conversation.   Alienation of affections flowing from the criminal conversation was alleged in the second count under the rule of cases such as *Valentine* v. *Pollak,* 95 Conn. 556, 561, 111 A. 869, and *Maggay* v. *Nikitko,* 117 Conn. 206, 211, 167 A. 816.   A single verdict form was used, and a verdict was returned under the first count against both defendants in the amount of $42,500 and under the second count against the named defendant in the amount of $5000.

Both defendants assign error in two rulings on evidence and in the denial of their motion to set aside the verdict "because the damages are excessive."   We consider the latter assignment first.   Apparently it refers to the verdict under each count, although that on the second count, as already noted, ran against the named defendant only.   Since no assignment of error is addressed to the charge, we assume that it was adequate and legally correct. *Lisa* v. *Yale University,* 122 Conn. 646, 649, 191 A. 346; *Harris* v. *Clinton,* 142 Conn. 204, 209, 112 A.2d 885; *Butler* v. *Steck,* 146 Conn. 114, 116, 148 A.2d 246.

The court's action in refusing to set aside the verdict must be tested by the narrative of the evidence, not by the finding.   *Pierce* v. *Albanese,* 144

Conn. 241, 256, 129 A.2d 606; *Palmieri* v. *Macero,* 146 Conn. 705, 707, 155 A.2d 750. The defendants' appendix is somewhat less complete than that of the plaintiff, but we consider both. Practice Book §§ 445-448. "[D]enial by the trial court of a motion to set aside a verdict claimed to be excessive is entitled to weighty consideration. . . . The issue . . . is not whether this court would have awarded more or less. It is whether the total amount of the verdict falls within the necessarily flexible limits of fair and reasonable compensation or is so large as to offend the sense of justice and compel a conclusion that the jury were influenced by partiality, prejudice or mistake." *Gorczyca* v. *New York, N.H. & H.R. Co.,* 141 Conn. 701, 703, 109 A.2d 589; *Prizio* v. *Penachio,* 146 Conn. 452, 457, 152 A.2d 507.

In support of their claim that the verdict was excessive, the defendants rely particularly on the fact that some two months after the named defendant, hereinafter referred to as the defendant, had taken the plaintiff's wife to his home, a marital settlement was arranged between the plaintiff and his wife by which the plaintiff paid her $1500 and she in turn instituted a divorce action in Alabama, obtained a valid decree of divorce and shortly thereafter married the defendant. The defendants quite properly do not claim that the fact of the divorce, as alleged in the third special defense, was a bar to the institution of an action either for alienation of affections or for criminal conversation occurring prior to the divorce. Restatement, 3 Torts § 689 & comments a, b; *Prettyman* v. *Williamson,* 1 Penne. 224, 239, 39 A. 731 (Del.) (alienation of affections); *Wales* v. *Minor,* 89 Ind. 118, 121 (criminal conversation); see *Fredericks* v. *Thatcher,* 140 Conn. 605, 607, 102 A.2d 882; note, 68 A.L.R. 560,

581. Rather, the defendants claim that as matter of law damages could not be awarded under either count for any loss or impairment of the right of consortium suffered after the date of the divorce decree. This claim appears to find support in *Prettyman* v. *Williamson,* supra. Since in the present case, as it was pleaded, recovery might have been had for some loss or impairment of the consortium under each count, the defendants' claim would apply to each, even though the same loss or impairment could not be compensated for twice. *Maggay* v. *Nikitko,* 117 Conn. 206, 213, 167 A. 816. We must assume that the charge correctly cautioned the jury on this point. Ibid.

Cases concerning the effect of a divorce on the right or extent of recovery in an action of alienation of affections or of criminal conversation are collected in an annotation in 20 A.L.R. 943. The conclusion of the annotator, which is sound, is: "It is generally held that a spouse against whom a divorce has been granted may maintain an action for alienation of affections or for criminal conversation occurring prior to the divorce, the decree [of divorce] not being res judicata with respect to the plaintiff's cause of action, and not operating as an estoppel by judgment." Ibid. A valid divorce judgment is a judgment in rem and "is binding on all the world as to the existence of a status which is the subject of the action," that is, the status of being unmarried upon the adjudication of divorce. Restatement, Judgments § 74 (1) & comment c. But the judgment of divorce does not establish any one of the facts or grounds on which it was based except as between the persons who actually litigated the question of the existence of that fact or ground. *Luick* v. *Arends,* 21 N.D. 614, 623, 132 N.W. 353. Here, since

neither defendant in this action was a party or privy to the divorce action, the plaintiff in this action did not litigate with either defendant the existence of any fact on which the decree of divorce was based. Such a fact could not be res judicata in this action, because of the difference in the parties. *Bridgeport Hydraulic Co.* v. *Pearson,* 139 Conn. 186, 198, 91 A.2d 778. Or, put in another way, the divorce decree could not operate as an estoppel by judgment as to any such fact. See *Sargent & Co.* v. *New Haven Steamboat Co.,* 65 Conn. 116, 126, 31 A. 543; Restatement, Judgments § 74 (2) & comment c. In other words, although the fact of a valid divorce was admissible and conclusively established the status of the plaintiff and his former wife as no longer married, it went no further; it did not establish, nor even tend to establish, any of the facts on the basis of which it was granted.[1]

The defendants claim that the mere fact that the parties were divorced is sufficient to preclude the allowance of any damages for loss or impairment of the consortium occurring after the date of the divorce. The usual rule is that future sufferings and disabilities may be a proper element of damages in an action of alienation of affections. *Palladino* v. *Nardi,* 133 Conn. 659, 664, 54 A.2d 265; *Keyes* v. *Churchward,* 135 Conn. 115, 118, 61 A.2d 668. The same rule would apply in an action of criminal conversation. *Bryant* v. *Carrier,* 214 N.C. 191, 195, 198

---

[1] It should be pointed out that statements in the pleadings in the divorce action, or testimony of witnesses therein, may be admissible as admissions, if made by a party to an action of alienation of affections or criminal conversation, or as inconsistent statements, if made by a witness in such an action, under the ordinary evidentiary rules relating to admissions and inconsistent statements. See, for instance, *Sears* v. *Curtis,* 147 Conn. 311, 315, 160 A.2d 742, and cases cited therein.

S.E. 619. The rule would apply here, even as to sufferings and disabilities subsequent to the divorce. It is contrary to the law to assume, as the defendants necessarily do in their claim, that the divorce decree establishes that it was granted, and the consortium lost, as a result of the present plaintiff's misconduct. As already pointed out, the divorce judgment, as such, is not even admissible for the purpose. *Luick* v. *Arends,* supra; *Hostetter* v. *Green,* 159 Ky. 611, 613, 167 S.W. 919.

The effect of the fact of the divorce is limited to the issue of damages. Where, as here, the fact is specially pleaded, it may enhance them. 1 Harper & James, Torts, p. 615; Restatement, 3 Torts § 689, comment b. "If . . . the alienation of affections is accompanied or followed by loss of services in the home, a separation or divorce, . . . such harms may be included by the jury in assessing the amount of damages recoverable." Restatement, 3 Torts § 683, comment k; see *Amellin* v. *Leone,* 114 Conn. 478, 481, 159 A. 293. This would be the case in the event that the divorce was a proximate consequence of the defendant's tort. On the other hand, it has been indicated that the fact of the divorce may mitigate damages. 42 C.J.S. 349. In this connection, however, it should not be overlooked that under our law, as far as alienation of affections is concerned, "even though it be shown that the wife has no affection for the husband, the defendant may still be liable if he prevents or interferes with the possibility of a reconciliation between them." *Amellin* v. *Leone,* supra.

The jury might have found, under either count or both, that the divorce was a proximate consequence of an alienation of affections and that the plaintiff's apparent acquiescence in it was a mere acceptance

of the inevitable. Under these circumstances, the divorce, coupled with the marriage of the wife to the defendant, would establish that whatever impairment or destruction of the consortium had proximately resulted from the defendant's alienation of affections under either count was permanent and complete and that any possibility of a reconciliation was destroyed. *Amellin* v. *Leone,* supra, 480. What, if any, merit the defendants' claim might have if the divorce could not have been found on the evidence to have been a proximate consequence of the defendant's tort is a matter which we are not called upon to decide.

The evidence was conflicting as to the extent of the affections of the plaintiff's wife for the plaintiff prior to her acquaintance with the defendant, and it thus became a question of fact for the jury. The jury could have found, as the verdict indicates they did, that the defendant's conscious misconduct was of a wanton, brazen and cruel type which increased the injury to the plaintiff's feelings. *Keyes* v. *Churchward,* 135 Conn. 115, 119, 61 A.2d 668. This evidence also warranted an allowance of punitive or exemplary damages against the defendant. There was also evidence warranting the allowance of such damages against the defendant mother. *Amellin* v. *Leone,* supra, 482. The amount of the allowance for exemplary damages lay within the discretion of the trier except that it could not exceed the cost to the plaintiff of the litigation less taxable costs. *Proto* v. *Bridgeport Herald Corporation,* 136 Conn. 557, 571, 72 A.2d 820. And no such allowance could be made unless the plaintiff, by proper evidence, proved the actual and reasonable cost to him of the litigation. *Yavis* v. *Sullivan,* 137 Conn. 253, 261, 76 A.2d 99. The plaintiff offered evidence as to the

nature and extent of the services rendered by his attorneys in connection with this case and expert testimony that the fair value of those services was $7000, not including disbursements.

The damages under the second count were clearly not excessive, even for the adultery alone, and the motion to set aside the verdict rendered on that count is without merit. *Doroszka* v. *Levine,* 111 Conn. 575, 580, 150 A. 692. If we consider the evidence under the first count in the light most favorable to the plaintiff, as we must *(Kiss* v. *Kahm,* 132 Conn. 593, 594, 46 A.2d 337; Maltbie, Conn. App. Proc. § 189), it is apparent that the jury could properly allow very substantial damages, both compensatory and exemplary. Under our rule, as set forth above *(Gorczyca* v. *New York, N.H. & H.R. Co.,* 141 Conn. 701, 703, 109 A.2d 589), it cannot be said that the court abused its discretion in refusing to set aside the verdict of $42,500 on the first count.

There remain the two rulings on evidence assigned as error. These occurred during the direct examination of the defendant, called as a witness by the plaintiff. The first question asked was whether the defendant, in December, 1955, during the time he was seeing the plaintiff's wife, was in love with his former, divorced wife. The defendant answered in the negative. Another question was whether he was then discussing with her the possibility of a remarriage. He answered that this was possible. These questions were objected to as irrelevant. While neither question seems of much importance, the state of the defendant's feelings toward the plaintiff's wife could not be said as matter of law to be irrelevant to the issue of alienation of affections. *Reynolds* v. *Vroom,* 132 Conn. 53, 56, 42 A.2d 336. The effect of the answers was

to indicate that at that time the defendant still had some affection for his former wife. This would tend to minimize the quantum of his affections for the plaintiff's wife and, in turn, the extent to which he would be likely to alienate her affections. It was certainly not erroneous for the court to permit the plaintiff to inquire as to this, although the answer to the second question would appear to be more likely to have been favorable to the defendants than to the plaintiff, especially under the first count. There was no error in these rulings.

Also on the direct examination by the plaintiff of the defendant, the latter was asked various questions about his relationship with a woman who had served as his secretary while he was employed as a civilian with the United States forces in Germany after World War II, some ten years before. One of the questions was whether he had testified in another proceeding that this woman had been his mistress. This question was objected to, solely on the ground of irrelevancy. The question was allowed, and the defendant acknowledged having so testified. Thus, the prior testimony became available to the jury as an admission. The court in its discretion could permit the plaintiff to impeach the defendant if, as quite obviously was the case, he had been shown to be hostile. *Carney* v. *Hennessey*, 77 Conn. 577, 586, 60 A. 129. In the discretion of the court, the examination could be permitted to extend to questions as to particular acts of misconduct, although those acts were themselves irrelevant to the issues in the case as framed by the pleadings, if they showed a lack of veracity and not merely general bad character. *Shailer* v. *Bullock*, 78 Conn. 65, 69, 61 A. 65.

Whether particular acts of misconduct are relevant to lack of veracity depends on whether they

have a logical tendency to indicate a lack of veracity. See *Delmore* v. *Polinsky*, 132 Conn. 28, 31, 42 A.2d 349; *Plumb* v. *Curtis*, 66 Conn. 154, 166, 33 A. 998. This question of relevancy is, generally speaking, not within the discretion of the court. *State* v. *Perelli*, 125 Conn. 321, 328, 5 A.2d 705.[2] Thus, unless particular acts of misconduct are indicative of a lack of veracity, it is error to permit cross-examination concerning them, however much they may be indicative of bad moral character. *Shailer* v. *Bullock*, supra, 70. It does not follow, however, that if the acts inquired about are indicative of a lack of veracity, the court must permit the cross-examination.[3] Whether to permit it lies largely within the court's discretion. Ibid.; *State* v. *Ferguson*, 71 Conn. 227, 232, 41 A. 769. It is only where there has been an abuse of discretion that error will be found in the exclusion of such a question. In the instant case, the remoteness in point of time, apart from any other consideration, would have justified, although it did not require, the exclusion of the question. *Shailer* v. *Bullock*, supra, 71.

Only a few types of sexual misconduct, in and of themselves, are indicative of a lack of veracity,

---

[2] Some of the questions asked in *State* v. *Perelli*, 125 Conn. 321, 328, 5 A.2d 705, constituted attacks on credibility under what is now General Statutes § 52-145 by inquiry regarding conviction of crime. This type of question is not involved in the instant case and is governed by the rule set forth in cases such as *State* v. *English*, 132 Conn. 573, 579, 46 A.2d 121.

[3] Although it is the general rule that whatever is relevant is admissible unless it falls within some particular exclusionary rule, a court, in applying the general rule, may exclude evidence which, though relevant, has such slight probative value that under all the circumstances its admission would tend to confuse and impede, rather than illuminate and advance, the just determination of the litigation. See cases such as *State* v. *Sebastian*, 81 Conn. 1, 4, 69 A. 1054.

however much they may be indicative of bad moral character. Note, 65 A.L.R. 410. But where the witness was married at the time of the act inquired about, a new and additional element is injected which may affect the question of relevancy to the issue of veracity. In the present case, the defendant was married to his first wife at the time of the misconduct. It cannot be said that his course of conduct in entering into an extramarital sexual relationship in Germany had no logical tendency to indicate a lack of veracity on his part. It therefore was relevant. See *State* v. *Perelli,* 128 Conn. 172, 181, 21 A.2d 389. As against the objection on the ground of irrelevancy, the court in its discretion could permit the question. *Casalo* v. *Claro,* 147 Conn. 625, 629, 165 A.2d 153. The memorandum of decision, considered in connection with the finding (*Goldblatt* v. *Ferrigno,* 138 Conn. 39, 40, 82 A.2d 152; Maltbie, Conn. App. Proc. § 152), indicates that the court permitted the question as impeaching the credibility of the defendant and for certain other purposes. Whether the question was irrelevant in the latter aspect is a matter we need not determine, since it was generally offered and then was generally objected to as irrelevant, but not as irrelevant for any particular stated purpose. *Salvatore* v. *Hayden,* 144 Conn. 437, 442, 133 A.2d 622; *Nichols* v. *Turney,* 15 Conn. 101, 115.

There is no error.

In this opinion the other judges concurred.