708 P.2d 912

**The STATE of Idaho,**
**Plaintiff-Respondent,**

v.

**Vernon Stuart GABRIELSON,**
**Defendant-Appellant.**

**No. 15075.**

Court of Appeals of Idaho.

Oct. 24, 1985.

John M. Bybee, Idaho Falls, for defendant-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., and Myrna A.I. Stahman, Deputy Atty. Gen., Boise, for plaintiff-respondent.

Before BISTLINE, Acting C.J., and McFADDEN, and OLIVER, Acting JJ.

OLIVER, Acting Judge.

Vernon Stuart Gabrielson was tried before a jury and convicted of rape, aggravated assault, first degree kidnapping and committing an infamous crime against nature. These convictions arose out of an incident that occurred on July 31, 1982 near the city of Idaho Falls.

Gabrielson appeals on two issues. First he claims that he was denied his right to a speedy trial as guaranteed by I.C. § 19-3501. Secondly, he argues that the trial court erroneously denied him the right to an evidentiary hearing as provided for in I.C. § 18-6105. For reasons set forth below, we affirm the trial court on both issues.

### I. The Right to a Speedy Trial

Gabrielson argues that he was denied his right to a speedy trial as provided for in § 19-3501, which states in relevant part:

**When action may be dismissed.**—The court, unless good cause is shown, must order the prosecution or indictment to be dismissed in the following cases:

. . . .

2. If a defendant whose trial has not been postponed upon his application, is not brought to trial within six (6) months from the date that the indictment or information is filed with the court.

The information was filed on August 12, 1982. The first trial date was set for November 15, 1982. A continuance was then ordered, according to the district judge, because of a calendaring difficulty. Trial was then set for December 6, 1982. The trial judge recollected that a continuance was again granted because the prosecutor's chemist was unavailable. Subsequently, a third trial date was scheduled for January 6, 1983, but that date was also vacated due to the unavailability of the chemist. A fourth trial date, that of February 14, 1983, was scheduled. However, at that time the trial judge entered the hospital for two weeks of medical tests, and there were no other judges available to hear the case.

On March 1, 1983, defense counsel filed a motion to dismiss for lack of a speedy trial. At the hearing on the motion the trial judge stated, "I find there is good cause

for continuing this case, so I will make a finding that there has been good cause shown for the continuance of the case, and the case will be continued as scheduled." Thereafter, the trial was held on March 7 through March 9, 1983 and the defendant was convicted.

■ When a criminal defendant makes a prima facie showing that his right to a speedy trial is violated under I.C. § 19–3501, the district court must determine whether there was "good cause" for the delay. In such cases the burden is on the state to show "good cause" for the delay, just as the primary responsibility for bringing a case to trial is upon the state. *State v. Hobson*, 99 Idaho 200, 202, 579 P.2d 697, 699 (1978).

■ Here the burden has been met. We agree with the trial court that the reasons for the delay were real, not fictional, and for "good cause." Occasionally, a finding of good cause must be made after the fact as was done in this case. Further, the length of the delay was less than one month; the defendant did not assert his right to a speedy trial until after the expiration of the six month period and the defendant has not attempted to show any prejudice to him by the delay. Since we determine the delay was for "good cause" it is unnecessary to attempt to apportion the delay as state charged, defendant charged or "neutral," i.e., court charged.

## II.   *The I.C. § 18–6105 Hearing*

The second issue is whether the trial court improperly denied defendant's request for an evidentiary hearing to explore the victim's prior sexual conduct. Gabrielson contends that this right is guaranteed by both I.C. § 18–6105 and by the constitutional right of confrontation provided for in the sixth amendment of the United States Constitution. Gabrielson argues that since he and the victim were strangers, he had no other way of finding out about her prior sexual conduct.

I.C. § 18–6105, commonly called the "rape shield statute" provides:

In prosecutions for the crime of rape, evidence of the prosecuting witness' previous sexual conduct shall not be admitted or reference made thereto in the presence of the jury, except as provided for hereinafter. The defendant may make application to the court before or during the trial for the admission of evidence concerning the previous sexual conduct of the prosecuting witness. Upon such application the court shall conduct a hearing out of the presence of the jury as to the relevancy of such evidence of previous sexual conduct and shall limit the questioning and control the admission and exclusion of evidence upon trial. Nothing in this section shall limit the right of either the state or the accused to impeach credibility by showing prior felony convictions.

This case presents facts similar to those of *State v. Palin*, 106 Idaho 70, 675 P.2d 49 (Ct.App., 1983), wherein the defendant was charged with rape and kidnapping and wished to make inquiry at trial into the victim's past sexual conduct. In upholding the trial court's ruling denying such inquiry, the court said:

A party seeking to present evidence must identify that evidence sufficiently to enable the trial court to make an informed ruling. *E.g. Jones v. State*, 576 P.2d 997 (Ala.1978). If a defendant is charged with a crime to which consent is a defense, wishes to show that prior sexual conduct is relevant, *he must make a preliminary showing which indicates the relevancy. State v. Herrera*, 92 New Mexico 7, 582 P.2d 384 (1978); *Cf.* I.R.C.P. 43(c) (in civil trial, offer of proof should be "evidence in full"). Upon the present record we are unable to determine the nature of the evidence sought to be admitted, other than defense counsel's suggestion that the rape victim may have been unchaste. 106 Idaho at 73, 675 P.2d at 52. (emphasis added).

In *State v. Herrera, supra*, cited in *Palin*, the New Mexico Court of Appeals stated:

The question of relevancy is not raised by asserting that it exists, there must be a showing of a reasonable basis for believing that past sexual conduct is pertinent to the consent issue. (citation omitted) 92 New Mexico at 16, 582 P.2d at 393.

■ In the present case, no preliminary showing was made. Clearly I.C. § 18–6105 was not intended to allow defense counsel to conduct a "fishing expedition" into the prior sexual conduct of the victim, even outside the presence of a jury. At oral argument counsel for the defendant admitted that at the time the request for an evidentiary hearing was made no evidence of previous sexual conduct existed and the hearing would in fact be a "fishing expedition" to make such a determination.

Therefore, we find that the trial court did not err in denying Gabrielson's motion for a hearing under I.C. § 18–6105.

Judgment of conviction Affirmed.

McFADDEN, Acting J., concurs.

BISTLINE, Justice, concurring in part and dissenting in part.

## I.

I concur in Part I of the opinion for the court, but suggest that generally where a trial judge postpones a trial or it otherwise is scheduled beyond the statutory time, good cause should be established before and not after the fact. Here, the trial court's determination of good cause, though not factually spelled out, was the *conclusion* of an implied consent to or acquiescence in the delay. The state's brief points out the following:

. The information against Gabrielson was filed on August 13, 1982. He was arraigned on August 31, 1982, and entered a plea of not guilty to all four counts, namely, rape, aggravated assault, infamous crime against nature, and kidnapping in the first degree. Trial was set for November 15, 1982, but was continued to December 6, 1982. There is nothing in the record to show which party made the motion or why. The prosecutor stated that this continuance was necessary because Gabrielson changed counsel just before the November trial date. Defense counsel agreed he could not have been ready by November 15 because he was substituted for prior counsel on October 29 and would not have been prepared for trial by November 15. By his own statement he agrees he would have had to make a motion for continuance. Defense counsel's statement establishes acquiescence in and a need for that continuance. Therefore, the delay from November 15 to December 6 (21 days) is more properly attributable to the defendant than the state. Delays in bringing a defendant to trial caused or consented to by the defendant are considered to constitute waiver of the right to be tried within the time affixed by statute or required by the constitution. *State v. Talmage*, 104 Idaho 249, 658 P.2d 920 (1983). Since defendant waived the 21-day period from November 15 to December 6 because he had changed counsel, then he was tried within *one day* of the statutorily required six months.

There is no record to show why the defendant was not tried on December 6, 1983, as scheduled, except the prosecutor's statement, "That was then continued I believe because the court had obligations out of county. ..." His statement was corroborated by the court who indicated it was due to "calendaring difficulties". The record is silent on who moved for the continuance and whether any objection was made to the continuance.

The next scheduled trial date was January 6, 1983. Because the state forensic chemist was not available to testify at that time, the state moved for continuance. Defense counsel at the hearing for this continuance stated, "Even though we oppose the continuance, as much as I hate to say it, we would like the chemist to be there too. We believe his testimony will be somewhat insculpatory (sic), so we need to have him." The

trial was continued until February 14, 1983. Even though defendant stated opposition to the thirty-nine day continuance, plainly he acquiesced to it because he needed the chemist for his case and wanted the chemist present. Again, this is a waiver of his right to a speedy trial, and therefore 39 days, the time from January 6 to February 14, should be deleted from the six months and 22 days between filing the information and trial.

The February 14 trial date was vacated on motion of the court because the judge had to be hospitalized and no other judge was available. The trial was scheduled and heard on March 7, 1983. From August 13, 1982, when the information was filed, to February 13, 1982, is six months. Twenty-two days later Gabrielson was tried.

The trial judge considering Gabrielson's speedy trial motion found good cause for the delay. In discussing the continuance due to the chemist's unavailability, the judge stated, "I will let the record stand on that as to the availability and the necessity *and the acquiescence* ..." Obviously, he considered Gabrielson's expressed need for the chemist to be acquiescence in that continuance of thirty-nine days. The judge then discussed the reason for the other continuances and stated the efforts to bring this matter to trial "have been with the maximum effort of everyone involved. I find there is good cause to be had for continuing this case". Respondent's brief, pp. 7–10.

As I understand it, we have made our own independent review of the record, and we perceive that the factual record substantiates the trial court's conclusion.

## II.

At the outset it is important to take note that the defendant and the prosecutrix were unacquainted prior to the evening of the incident which was followed by the prosecution of the defendant. It must be remembered also that defendant took the stand and corroborated the prosecutrix by testifying that sexual relations did take place. His account was that everything which took place was entirely consensual.

Both the defendant and the prosecutrix agreed on how they became acquainted that night, which briefly stated was as follows: Defendant had been drinking and had been stopped by a patrol car. The officer extracted defendant's promise to leave his car. Defendant approached a neighborhood house and asked a group assembled there for a ride home. The prosecutrix answered that she would drive him home, and did so, asking her friends to follow. The friends followed, but were purposefully evaded by actions of the defendant exerting threats according to the uncontradicted testimony of the prosecutrix, which was firmly corroborated.[1]

---

1. Jed Edelmayer was among the group of friends who had been with the prosecutrix during the day and evening of the incident. He identified the defendant, Gabrielson, as the man whom the prosecutrix agreed to drive home. A synopsis of his testimony is as follows:

   After swimming at a pool, the group returned to his home at between 10:00 and 10:30 p.m., where they observed that a police car had stopped an old, "beat up," yellow T-bird automobile in front of his home. After the police car left, Mr. Edelmayer observed defendant talking with the prosecutrix where she was sitting on the front step. She then recounted to Edelmayer defendant's story that the police officer had forbidden him to drive his car any further, and Gabrielson's request for a ride home. She asked Edelmayer to follow them in another car.

   With another friend as passenger and driving the prosecutrix's Subaru, Edelmayer followed defendant's car which was driven by the prosecutrix. At the same time that he observed defendant scoot closer to the prosecutrix, the defendant's car rapidly accelerated, took evasive action in addition to fast speed, and ultimately "shook" the slower Subaru.

   After vainly searching the immediate neighborhood for sign of defendant's car, Edelmayer returned to his home and, fearing for the prosecutrix's safety, reported to the police what had just transpired and his concern that she was in danger. He and friends returned to the area of the disappearance for an hour and a half, but were frustrated.

   Upon returning, Edelmayer again telephoned the police and obtained from the officer who earlier had stopped the defendant the name and address of the actual owner of the

The testimony of the prosecutrix from that point on was directly contradictory to defendant's, and was a portrayal of an absolute outrage—which the jury fully accepted as the truth.

With the defense being that everything was consensual, counsel naturally wanted to establish that the prosecutrix was some sort of a loose woman, and hence might have consented. Counsel was confronted by the fact that his client the defendant admittedly knew nothing about the prosecutrix—having never seen her before the night in question. At this point it is in order to resort to the state's brief to highlight the issue presented to us on the appeal:

> Gabrielson complains that because he and the proxecutrix were strangers there was no way of finding out about her prior sexual conduct without direct examination. The state notes that is not quite the case. Discovery procedures are proper in criminal trials (Idaho Criminal Rule 16). *Gabrielson could have asked the very questions he proposed to ask in the evidentiary hearing through discovery procedures.* If he then found any relevant evidence he could have presented it to the judge in an evidentiary hearing. *He chose not to avail himself of the discovery procedures.* Respondent's brief, p. 12 (emphasis added).

At oral argument, when counsel from the Attorney General's Office reiterated its contention that defense counsel had precluded himself from the relevancy hearing available under I.C. § 18–6105 by not utilizing pre-trial discovery procedures, the following colloquy between counsel and the Bench took place:

JUSTICE BISTLINE: I think you've come to the nub of the proposition before us there; you say that there should have been discovery, and the defendant, before he goes to trial, should ascertain some information so he's got at least something to go upon. But now, if he doesn't know the particular person as Mr. Bybee says that he doesn't, is there any procedure in the criminal law now—I don't think there used to be—but, can defense counsel, do they have a subpoena power pre-trial discovery to examine the prosecutrix?

MRS. STAHMAN: Boy, I can't speak from experience there, and I can't say that I looked into that in real detail, but it seems to me that there has to be a procedure that they could go into.

JUSTICE BISTLINE: I would think there should be too, but I don't know that there is.

MRS. STAHMAN: Because there are discovery procedures, certainly. I did argue the State v. Palin case and it seemed to me there was something like that done in that case.[2]

JUSTICE BISTLINE: You can see that this would happen. The prosecutor, the State, is certainly not going to ask the prosecutrix for a written statement of all of her prior sexual history, because if they did that and had it in their file then they'd have to cough it up on request. So they're not going to have it, not if they know what they're doing.

MRS. STAHMAN: That's right. That's why you have investigators as a defense attorney. Investigators can go out and find out information such as that. It's not that difficult to find out—

JUSTICE BISTLINE: But, from whom are they going to find it out?

MRS. STAHMAN: You don't necessarily have to go ask the victim. You can be inquiring with friends. You can find

---

defendant's car, drove to that address, but failed to find the car. After one of the friends telephoned the police for a third time, an officer came and took statements from Edelmayer and others.

At 5:00 a.m. in the morning Edelmayer was awakened by the prosecutrix's return. She "was crying and out of control," and wore only her swimming suit bottom.

With the defendant having been thus identified even before the prosecutrix returned, it is easy to understand why his only defense was based on a contention of consent.

2. The record in that case does not show any pretrial deposition discovery.

the reputation of the individual and once you know what type of reputation, that leads—you can find former boyfriends, present friends who are going to disclose that information without going directly to the prosecutrix.

JUSTICE BISTLINE: You say that you can, and maybe in some instances you could, like in a small community. But suppose you had a—what size city are we dealing with here in this case?

MRS. STAHMAN: Is it Idaho Falls?

MR. BYBEE: Yes.

JUSTICE BISTLINE: That's a fairly good-sized city, certainly not as large as Boise.

MRS. STAHMAN: But even in a large city you have your small communities. So, I can't accept that. I live in Boise, but I still live in a fairly small community. There's a community of people who know me and know what my background is and know what my history is. And I think that's similar no matter how large a city you live in.

JUSTICE BISTLINE: Then you run into the proposition of the State's got a key witness and people go around and try to get information on the key witness or to get to the key witness, even to talk to the key witness, and then they might be charged with tampering with a witness.

MRS. STAHMAN: As I say I don't believe you have to be talking with that key witness, but you have to show that you have some reason to believe that there is information that would be relevant. Let's look at the State v. Palin case. Now counsel said there was no prior Idaho case, but there is the 1983 Court of Appeals case dealing with *State v. Palin.* The State, in its brief, quoted that. The Court of Appeals held that: "A party seeking to present evidence must identify that evidence sufficiently to enable the trial court to make an informed ruling. If a defendant charged with a crime to which consent is a defense which it does show that prior sexual conduct is relevant, he must make a preliminary showing which indicates the relevancy." So there again, you have to give some information showing it's relevant. Judge Oliver?

JUDGE OLIVER: Wouldn't rule 16, subparagraphs 6 and 8 cover this criminal rule? Criminal Rule 16(6) and (8)?

MRS. STAHMAN: It's nice having a district judge here who has been there. I have never tried cases here in Idaho so that I feel as though I often am at a distinct disadvantage.

JUDGE OLIVER: Well, it's certainly my opinion. At this point I'd like to hear your comments, and from Mr. Bybee, in this regard, if Rule 16(6) and (8), if that rule doesn't cover just exactly this very thing?

MRS. STAHMAN: Okay, Rule 16 sub 6, State Witnesses?

JUDGE OLIVER: State Witnesses may at subsequent disclosure upon motion of the defendant showing his need for this information that may require this additional disclosure from other witnesses.

MRS. STAHMAN: Okay, I think that is correct, then. They could have used discovery under Rule 16(6) and asked for subsequent history—prior history, I'm sorry.

JUDGE OLIVER: I know it's been used for this purpose before.

MRS. STAHMAN: What we did say in our brief was that there was no discovery done, and so the trial is not the time to do the discovery and take off on a fishing expedition. We certainly don't feel they should have been denied the right to a hearing. They were given a hearing. They just did not make the showing necessary that they had information that would be relevant and the judge said, "Look, basically, I'm not going to let you use this as a fishing expedition." The questions that were being asked, the judge held, were not relevant. They were not even asking questions that were relevant to the past sexual history of this individual. So the State simply submits that the district court

was correct in limiting that hearing, because it should not be used for discovery purposes, and the questions that were being asked were merely a fishing expedition and were not relevant to anything that would happen at trial.

The rules referred to by Judge Oliver are as follows:

Rule 16(b)(6). State witnesses. Upon written request of the defendant the prosecuting attorney shall furnish to the defendant a written list of the names and addresses of all persons having knowledge of relevant facts who may be called by the state as witnesses at the trial, together with any record of prior felony convictions of any such person which is within the knowledge of the prosecuting attorney. The prosecuting attorney shall also furnish upon written request the statements made by the prosecution witnesses or prospective prosecution witnesses to the prosecuting attorney or his agents or to any official involved in the investigatory process of the case unless a protective order is issued as provided in Rule 16(k).

. . . .

Rule 16(b)(8). Disclosure by order of the court. Upon motion of the defendant showing that he has substantial need in the preparation of his case for additional material or information not otherwise covered by this Rule 16(b), and that he is unable without undue hardship to obtain the substantial equivalent by other means, the court in its discretion may order the additional material or information to be made available to him. The court may, upon the request of any person affected by the order, vacate or modify the order if compliance would be unreasonable or oppressive.

Following submission of the case we were advised by Judge Towles of the First Judicial District that there the district judges take a view differing from that of Judge Oliver, and do not allow deposition discovery as being within the above rules. We do not know whether the judges in the Sixth Judicial District have ruled as has Judge Oliver. The instant case is suggestive that they have not.

At any rate, in a criminal case where life or liberty are at stake, I do not believe we can safely surmise that a pretrial deposition would have been allowed. The brief of the Attorney General has *assumed* that it is available, as noted in the earlier excerpt. *State v. Palin,* 106 Idaho 70, 675 P.2d 49 (Ct.App.1984), cited in the state's brief and mentioned at oral argument, does not in the least sustain the state's position. Quite to the contrary, this court there noted that the purpose of defendant's proposed inquiry into the rape victim's sexual history "was to show her consent to his actions. *This purpose would be relevant* to a material issue in the case *only if such consent would tend to exculpate* Palin from criminal liability for the rapes or for the kidnapping of that victim." *Palin, supra,* 106 Idaho at 72, 675 P.2d at 51. The trial court went on to observe the total immateriality of the offered evidence where one of the counts of information alleged that the victim was under the age of consent, *Palin, supra,* Tr., p. 936—which holding on appeal was affirmed. "Consent is not a defense to this form of rape." *Id.* This *Gabrielson* case was tried in August of 1982, almost two years before the *Palin* case was decided on appeal—for which reason the district court did not have the benefit of its views, which, as directly pertinent to the question before us, were that, *as applied to a discussion of only the kidnapping count:*

In our view, even if counsel's suggestion were true, a mere showing of unchastity, by itself, would not have been relevant to show consent. Mere unchastity does not support an inference of consent to being kept or detained within the meaning of the kidnapping statute. Our view might be different if Palin had offered to prove that the victim had engaged in past conduct manifesting a pattern of voluntary encounter with men under circumstances similar to this case. *A jury legitimately might have inferred consent in this case from evidence that the rape victim previously*

*had met strangers in public places and voluntarily had gone elsewhere with them for sexual purposes.* But in the absence of such a particularized link between the victim's past conduct and her alleged actions in this case, we are constrained to hold that any inference of consent would not have been supported by the evidence sought. An inquiry merely to show unchastity would not have passed the test of relevancy. *Palin, supra,* 106 Idaho at 73–74, 675 P.2d at 52–53 (emphasis added).

Judge Burnett, in his *Palin* opinion, explained concisely and accurately the involvement of the Sixth Amendment to the federal Constitution, which is here the main thrust of defendant's appeal:

The right to confront and to cross-examine witnesses is guaranteed by the sixth amendment to the United States Constitution. Although no comparable provision exists in the Idaho Constitution, the sixth amendment is applicable to criminal prosecutions in this state by virtue of the fourteenth amendment to the United States Constitution. *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). *The effectiveness of cross-examination is enhanced by the ability to impeach the credibility of an adverse witness. Id.* at p. 74, 675 P.2d at 53 (emphasis added).

Here it is obvious that defense counsel could not confront the prosecutrix with evidence "that the victim had engaged in past conduct manifesting a pattern of voluntary encounters with men under circumstances similar to this case," *Palin, supra,* at 74, 675 P.2d at 53, unless he could elicit such information from her own mouth. The proper place for that to take place would be in the absence of the jury and preferably also in the privacy of the court's chambers. If defense counsel can elicit nothing from the witness which tends to exculpate the defendant, there is no need to pass on its

relevancy. It is *per se* irrelevant. The purpose of the statute, and a salutary one, is to avoid the embarrassment and anguish of such questions in the public forum of a courtroom. In *Palin,* the trial court conducted such a relevancy hearing, but held the evidence inadmissible as a matter of law—because of the victim's age of nonconsent. Here, however, there was not that element of age. The court ruled out the evidence without even hearing it. Chances are probably 100 to 1 that a questioning of the prosecutrix would have elicited no answers which the trial court would see as relevant evidence and that would have been the end of it. The prosecutrix would have been spared the agony of having those assembled in the courtroom hear such intimate questions about her past—which was the clear intent of the new statute.

In a given case, however, such questioning could be relevant where the determining factor was the credibility of the defendant vs. the credibility of the prosecutrix, i.e., was there consent, or, was there force and/or threats.

If the court were to hold today that it is within the purview of the Criminal Rules to take pretrial depositions, as the state's brief has assumed to be so, and as Judge Oliver has allowed in the Sixth Judicial District, the beneficial purposes of I.C. § 18–6105 would be materially advanced. Far better to make such inquiries of a victim in the privacy of a deposition setting than in a courtroom, and I for one would so vote this day. Moreover, use of a pretrial deposition would avoid using the court's time other than to read the deposition.

But in the absence of such a provision—which the state's brief erroneously declared to be already in existence—I see no alternative but to say today that the defendant here—guilty though he well may be—was wrongfully deprived of the right to have a relevancy hearing.[3] It is to be

---

**3.** There was a relevancy hearing of sorts, but not one which would comport with the purpose of the statute.

The record in the instant case shows that Gabrielson wished to ask the victim if she was a virgin, if she had any boyfriends previously,

kept in mind that the state, all in one breath, decries defense counsel's intended cross-examination as a "fishing expedition" —which surely it was and as defense counsel agreed at oral argument—but essentially goes on to contend that the fishing could and should have been done earlier by discovery.

### III.

My dissent is not to be understood as being any indication that the defendant is not guilty; my concern is with an eye to the state of the law and precedent. Were the Court today in accord with *Palin,* and were we holding that the court erred, but that the error, beyond a reasonable doubt, could not have contributed to the jury's verdict, *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), I would concur.

what the level of her sexual activity had been, *and whether she had ever had sexual relations with a person she just met.* The court found these matters were not relevant to whether or not she could have been raped.

The state asserts that Idaho Code § 18–6105 was enacted to prevent the harassment of victims of sex crimes by exploratory questioning about their prior sexual conduct. Respondent's Brief, pp. 12–13 (emphasis added).

My view is exactly the same as that declared by the state. The statute prevents such questioning *in front of the jury* without a preliminary inquiry before the court. The court has to hear the testimony in order to pass on its relevancy. Depending on what the prosecutrix testifies to *in camera,* it may or may not be relevant. Here, with consent the only defense, the court should have allowed the questioning in order to rule advisedly. *Palin* so reads the statute.