## STATE OF CONNECTICUT *v.* JOHN W. SULLIVAN
### (SC 15648)

Borden, Berdon, Palmer, McDonald and Peters, Js.

Argued December 4, 1997—officially released May 12, 1998

*Lisa J. Steele*, special public defender, for the appellant (defendant).

*Denise B. Smoker*, assistant state's attorney, with whom, on the brief, were *Mark S. Solak*, state's attorney, and *Mark Stabile*, assistant state's attorney, for the appellee (state).

*Opinion*

PETERS, J. This appeal concerns the preliminary showing that a defendant in a sexual assault case must make before he may cross-examine a constancy of accusation witness with respect to the victim's alleged prior false complaint of sexual assault by another person. The state charged the defendant, John W. Sullivan, with sexual assault in the first degree pursuant to General Statutes § 53a-70 (a) (1)[1]. After a jury trial, he was found

---

[1] General Statutes § 53a-70 provides in relevant part: "(a) A person is guilty of sexual assault in the first degree when such person (1) compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person . . . ."

guilty and sentenced to ten years imprisonment, execution to be suspended after five years.

The defendant appealed from the judgment of the Appellate Court, which, in a per curiam opinion, had affirmed the trial court judgment against him.[2] *State* v. *Sullivan*, 44 Conn. App. 902, 688 A.2d 368 (1996). In response to his petition for certification to appeal, we granted certification limited to the following issue: "Whether the Appellate Court correctly concluded that the trial court did not abuse its discretion in excluding evidence regarding a constancy of accusation witness?"[3] *State* v. *Sullivan*, 240 Conn. 919, 692 A.2d 812 (1997). We affirm the judgment of the Appellate Court.

The jury reasonably could have found the following facts. In the summer of 1992, the defendant, then a Massachusetts state trooper, was married to the victim's first cousin. The victim was working part-time as a bookkeeper and part-time as an exotic dancer. She had done some modeling, including posing for nude photographs. On July 1, 1992, the defendant contacted the victim and told her that, along with twenty-five other people on a "secret indictment list," she would be charged with telephone solicitation, drug trafficking, racketeering, prostitution and illegal pornography. The defendant stated that the police had copies of some of the victim's nude photographs, and that she was facing three to six years in prison. He told her that if she cooperated with him, he could have her name removed

---

[2] The sole issue presented to the Appellate Court was: "Whether the trial court abused its discretion in excluding evidence that the victim falsely claimed to have initiated other police investigations of rape?"

[3] The question that we certified did not include any issue of constitutional law. The defendant's petition for certification did not raise any issue of constitutional law. The petition stated the question to be "the interplay between the rape shield law and the constancy of accusation doctrine." Although the petition alluded to the constitutional caveat contained in General Statutes § 54-86f (4), the petition characterized the issue as pertaining to "the relevancy of prior false statements."

from the secret indictment list. The victim did not learn until September 15, 1992, that the defendant's representations were baseless. In the meantime, frightened by their apparent import, especially by the threat of criminal prosecution, she accompanied the defendant to various places, including a location in Connecticut, where he forced her to engage in sexual intercourse. When she discovered the true facts, she reported these events to the state police in both Connecticut and Massachusetts.

At his trial for having committed those sexual assaults, the defendant submitted a motion in limine requesting that the court allow him to cross-examine the victim and her father. The defendant sought the opportunity to cross-examine those two witnesses with respect to a statement that the father had made to the police. That statement represented that the victim had been sexually assaulted once before, in 1990, and that the Worcester, Massachusetts police had handled that investigation. Defense counsel informed the court that discussions with the Worcester police had revealed that they had no record of a complaint by the victim regarding this alleged prior incident. In support of his motion, the defendant submitted a copy of the father's statement to the police in the current case, and a letter from the Worcester police confirming that they had no record of a previous sexual assault investigation concerning this victim.

The trial court denied the defendant's motion. The court noted that this alleged prior sexual assault complaint had been mentioned only in a statement by the victim's father, not in the victim's own testimony. The court reasoned that cross-examination of the victim and her father regarding this collateral incident would be irrelevant and distracting. We agree with the Appellate Court; *State* v. *Sullivan*, supra, 44 Conn. App. 902; that the judgment of the trial court should be sustained.

In his appeal to this court, the defendant claims that, contrary to the conclusion of the Appellate Court, the trial court abused its discretion in disallowing this line of questioning. He asserts that the proffered evidence was relevant to show that the victim had lied to her father about an official investigation. According to the defendant, the fact that the victim's father had testified on her behalf as a constancy of accusation witness gave the defendant the right of cross-examination about the prior investigation. The defendant further argues that this line of questioning would not have violated Connecticut's rape shield law, General Statutes § 54-86f,[4] because the relevant inquiry would have focused, not on the occurrence of a sexual assault in 1990, but on the victim's alleged misrepresentation to her father about the existence of an official investigation. Finally, the defendant argues that, because the doctrine of constancy of accusation permits witnesses to present hearsay testimony to corroborate the victim's story, the

---

[4] General Statutes § 54-86f provides: "In any prosecution for sexual assault under sections 53a-70, 53a-70a, and 53a-71 to 53a-73a, inclusive, no evidence of the sexual conduct of the victim may be admissible unless such evidence is (1) offered by the defendant on the issue of whether the defendant was, with respect to the victim, the source of semen, disease, pregnancy or injury, or (2) offered by the defendant on the issue of credibility of the victim, provided the victim has testified on direct examination as to his or her sexual conduct, or (3) any evidence of sexual conduct with the defendant offered by the defendant on the issue of consent by the victim, when consent is raised as a defense by the defendant, or (4) otherwise so relevant and material to a critical issue in the case that excluding it would violate the defendant's constitutional rights. Such evidence shall be admissible only after a hearing on a motion to offer such evidence containing an offer of proof. On motion of either party the court may order such hearing held in camera, subject to the provisions of section 51-164x. If the proceeding is a trial with a jury, such hearing shall be held in the absence of the jury. If, after hearing, the court finds that the evidence meets the requirements of this section and that the probative value of the evidence outweighs its prejudicial effect on the victim, the court may grant the motion. The testimony of the defendant during a hearing on a motion to offer evidence under this section may not be used against the defendant during the trial if such motion is denied, except that such testimony may be admissible to impeach

defendant should be allowed broad latitude to cross-examine such witnesses to determine whether the victim had lied in the past about matters of similar gravity.

The constancy of accusation doctrine is well established in Connecticut and recently has been reaffirmed by this court. See *State* v. *Troupe*, 237 Conn. 284, 297–98, 303–304, 677 A.2d 917 (1996); *State* v. *Kelley*, 229 Conn. 557, 565, 643 A.2d 854 (1994); *State* v. *Dabkowski*, 199 Conn. 193, 199–203, 506 A.2d 118 (1986). The doctrine originally was premised on the arguably inaccurate premise that, if a woman had been sexually assaulted, it would be "natural" for her to confide in others.[5] See, e.g., *State* v. *De Wolf*, 8 Conn. 93, 99 (1830). Until *State* v. *Troupe*, supra, 304, we permitted witnesses to testify about the details of a victim's accounts of the alleged sexual assault on the theory that, if the victim's story were true, "the evidence would show constancy in the charge even to the details, and the truth would the more clearly appear." *State* v. *Kinney*, 44 Conn. 153, 156–57 (1876); *State* v. *De Wolf*, supra, 99. In *State* v. *Troupe*, supra, 284, however, we restricted the doctrine so that a constancy of accusation witness could testify only to the fact and the timing of the victim's complaint. Even so limited, the evidence would be admissible solely for corroboration of the victim's testimony, and not for substantive purposes. Id., 304.

Notwithstanding our decision in *Troupe*, we recognize that the constancy of accusation doctrine creates a tension between competing well recognized principles. It remains a powerful weapon in the state's arsenal

the credibility of the defendant if the defendant elects to testify as part of the defense."

[5] As we noted in *Troupe*, the assumption that it is "natural" for victims to report that they have been sexually assaulted has been largely discredited by modern research indicating that victims may not tell others about a sexual assault owing to feelings of shame or fear of public embarrassment. *State* v. *Troupe*, supra, 237 Conn. 295.

to secure justice for victims of sexual assaults. It also, however, constitutes a potential threat to the accused's right of confrontation under the sixth amendment to the constitution of the United States and under article first, § 8, of the constitution of Connecticut.[6] To resolve this tension, the defendant must be allowed an adequate opportunity to cross-examine constancy of accusation witnesses. Such cross-examination properly includes questioning the witness not only about the victim's report of the present charge, but also about the victim's prior false statements, to that witness, that tend to undermine the credibility of the victim's present complaint.

At trial in this case, the defendant sought to cross-examine the victim and her father about claimed false statements by the victim to her father regarding a prior alleged sexual assault and its investigation. The defendant's motion in limine stated that the subject of the proposed cross-examination was a "prior allegation of rape . . . which the father claims was under investigation by the Worcester [p]olice [d]epartment."

As the defendant acknowledges, it is well established that "[t]he trial court has broad discretion in ruling on the admissibility of evidence."[7] *State* v. *Miller*, 202 Conn. 463, 482, 522 A.2d 249 (1987). "The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion." *State* v. *Avis*, 209 Conn. 290, 298, 551 A.2d 26 (1988),

---

[6] At no point in these proceedings has the defendant claimed that the provisions of our state constitution afford him rights greater than those arising under the federal constitution.

[7] The defendant has not briefed a claim that the trial court's ruling violated his constitutional rights under either the United States or the Connecticut constitution. He claims only that the trial court abused its discretion in excluding the proffered testimony. Accordingly, we analyze this claim as an evidentiary issue within the discretion of the trial court, albeit one controlled by a statutory exception incorporating constitutional standards. General Statutes § 54-86f (4).

cert. denied, 489 U.S. 1097, 109 S. Ct. 1570, 103 L. Ed. 2d 937 (1989).

In a sexual assault case, the admissibility of evidence of the victim's prior sexual conduct, including past allegations of sexual assault, is narrowly circumscribed by § 54-86f.[8] A clear statement of the defendant's theory of relevance is all important in determining whether the evidence is offered for a permissible purpose. As the defendant conceded at oral argument before this court, his offer of proof was not a model of clarity. The defendant's written motion in limine[9] and supplementary oral representations to the trial court[10] could be

---

[8] Justice Berdon's dissenting opinion points to law from other jurisdictions to argue that a victim's prior false allegations of sexual assault may not be covered by our rape shield statute. It is at least doubtful that an *allegation* by a defendant that a victim's prior claim was false would be sufficient to circumvent § 54-86f. Such a rule could eviscerate the prophylactic function of our rape shield statute. In any event, this controversial issue has not been raised by the defendant in this case, who argues only that the rape shield statute would not cover prior statements about whether the police had initiated a previous sexual assault investigation.

[9] The defendant's motion in limine provided: "Now comes the defendant in the above-entitled matter and moves that this Honorable Court allow defense counsel to cross-examin[e] the complaining victim and her father with respect to a prior allegation of rape . . . which the father claims was under investigation by the Worcester Police Department. Discussions with members of the Worcester Sexual Assault unit disclosed that this was never [a] complain[t] made by [the victim] with respect to another rape. This evidence is relevant and material to the impeachment of [the victim] and [her father's] credibility."

[10] Defense counsel stated to the trial court that he had submitted: "[A] motion in limine with respect to my cross-examining both the alleged victim in this particular case and also her father with respect to prior rape allegations in a statement that was given to the Connecticut State Police by [the victim's father]. . . . He alleges that [the victim] had been raped in the past by a young man who was working for Rob Roy's, which is a hair salon in Worcester, and that that particular matter was brought to the attention of the Worcester Police Department and that particular incident was under investigation by the Worcester Police. We have had contact with the Worcester Police. I believe it was Lieutenant [William P.] O'Connor who heads the sexual assault unit in Worcester and there was no investigation. There was no report of a rape in this particular case by [the victim], Your Honor. And

interpreted to present at least two possible theories of relevance. Considered together, they indicate that the proposed subject of cross-examination might have been: (1) claimed false allegations by the victim of a prior sexual assault; or (2) claimed false statements by the victim to her father regarding a previous investigation of a prior alleged sexual assault.[11] In this court, the defendant also argued that he sought to pursue this line of questioning in order to demonstrate that the victim had lied to a constancy of accusation witness about the existence of a serious felony investigation, without revealing that the investigation had involved a sexual assault charge. We conclude that the trial court acted within its discretion in disallowing this line of questioning on any of these theories of relevance.

Insofar as the defendant sought to cross-examine the victim and her father regarding an alleged prior sexual assault and its investigation, the trial court was bound, in the exercise of its discretion, by our rape shield statute. Section 54-86f limits the admissibility of evidence of a victim's prior allegations of sexual assault. See *State* v. *Kulmac*, 230 Conn. 43, 50–56, 644 A.2d 887 (1994); *State* v. *Barrett*, 43 Conn. App. 667, 671–73, 685 A.2d 677 (1996), cert. denied, 240 Conn. 923, 692 A.2d 819 (1997); *State* v. *Manini*, 38 Conn. App. 100, 106–108, 659 A.2d 196 (1995), cert. denied, 234 Conn. 920, 661 A.2d 99 (1995). Under § 54-86f (4), such evidence is admissible if it is "so relevant and material to a critical issue in the case that excluding it would violate the defendant's constitutional rights."

The defendant bears the burden of establishing the relevance of the proffered testimony. In order to get

we would seek to cross-examine on that matter because it goes to the credibility of both [the victim] and also [her father]."

[11] To the extent that the defendant's offer of proof was intended to give the defendant greater latitude to cross-examine the victim herself, that claim does not involve the constancy of accusation doctrine. The victim's father

such evidence before the jury, he must make a showing that, in fact, the prior complaint was: (1) made by the victim; and (2) false. *State* v. *Kelley*, supra, 229 Conn. 563; *State* v. *Kelly*, 208 Conn. 365, 377, 545 A.2d 1048 (1988); *State* v. *Stevenson*, 43 Conn. App. 680, 694–95, 686 A.2d 500 (1996), cert. denied, 240 Conn. 920, 692 A.2d 817 (1997); *State* v. *Barrett*, supra, 43 Conn. App. 674; *State* v. *Manini*, supra, 38 Conn. App. 114–15. Even if the defendant succeeds in establishing the relevance of the prior false allegation of sexual assault, however, the trial court still may exclude the evidence if its probative value is outweighed by such factors as time, confusion or prejudice.[12] *State* v. *DeMatteo*, 186 Conn. 696, 702–703, 443 A.2d 915 (1982); see *State* v. *Kindrick*, 30 Conn. App. 56, 59–60, 619 A.2d 1 (1993) (evidence admissible under § 54-86f [4] only if its probative value outweighs its prejudicial effect).

In order to carry his threshold burden of establishing relevance, a defendant must make an "offer of proof as a prerequisite to obtaining an evidentiary hearing to determine the admissibility of evidence . . . ."[13] *State*

is the only person whose cross-examination is at issue with respect to impeachment of a constancy of accusation witness.

[12] For example, a trial court might act within its discretion to exclude evidence of even a demonstrably false prior allegation of sexual assault if the circumstances of the victim's earlier accusation were so different from the case at bar that the prejudicial effect of the prior incident would outweigh its probative value. See, e.g., *United States* v. *Bartlett*, 856 F.2d 1071, 1088 (8th Cir. 1988) (circumstances of two cases were so dissimilar that even if victim had lied about first case, probative value of that fact was slight); *Hughes* v. *Raines*, 641 F.2d 790, 793 (9th Cir. 1981) (aside from fact that proffer was insufficient to demonstrate falsity, prior sexual assault allegation had involved date rape and current case was stranger rape). Because the defendant's proffer in this case was too weak to establish even relevance, as discussed later in this opinion, we are not required to engage in this balancing here.

[13] General Statutes § 54-86f provides in relevant part: "Such evidence shall be admissible only after a hearing on a motion to offer such evidence containing an offer of proof. On motion of either party the court may order such hearing held in camera . . . . If the proceeding is a trial with a jury, such hearing shall be held in the absence of the jury. . . ."

v. *Manini*, supra, 38 Conn. App. 114. The preliminary showing must be sufficient to demonstrate that "the evidence sought to be explored in the evidentiary hearing is relevant . . . [and] to enable the trial court to make an informed ruling in connection with the exercise of its discretion on the issue." Id.

In this case, the defendant failed to make an adequate preliminary showing to justify cross-examining the victim and her father about claimed allegations of an alleged prior sexual assault and its investigation.[14] To

[14] The defendant argued in his brief to this court that the trial court abused its discretion in failing to order an evidentiary hearing to determine whether the evidence was admissible. As discussed subsequently, however, defense counsel did not request such a hearing at trial. In this court, the defendant also claimed that the trial court should have ordered an evidentiary hearing sua sponte, even in the absence of a request by defense counsel. The defendant, however, cited no cases to support his claim that the trial court had an affirmative duty to order an evidentiary hearing sua sponte. As discussed previously in footnote 3 of this opinion, the certified question presents only an evidentiary question, not a constitutional claim. In such circumstances, "we are not required to review issues that have been improperly presented to this court through an inadequate brief." *Connecticut National Bank* v. *Giacomi*, 242 Conn. 17, 44–45, 699 A.2d 101 (1997); see also *State* v. *Tweedy*, 219 Conn. 489, 510 n.17, 594 A.2d 906 (1991).

Contrary to the assertion of Justice Berdon in his dissenting opinion, we are not holding that the defendant was *required* to move for an evidentiary hearing in order to bolster this presentation. Moreover, the defendant's election not to move for such a hearing did not deprive the trial court of its ability to order such a hearing sua sponte. Had the trial court found the defendant's offer of proof persuasive, it would have been within its discretion in ordering such a hearing.

We reject, however, the defendant's claim, in passing, that the court was *obligated*, sua sponte, to hold such a hearing. We have held that a trial court may abuse its discretion if it fails to inquire into charges of juror misconduct. *State* v. *Brown*, 235 Conn. 502, 521, 668 A.2d 1288 (1995). Similarly, the trial court is obligated to inquire whether the defendant is making a knowing and voluntary waiver of certain fundamental constitutional trial rights. See *State* v. *Frye*, 224 Conn. 253, 262, 617 A.2d 1382 (1992) (right to represent oneself); *State* v. *Williams*, 205 Conn. 456, 461, 534 A.2d 230 (1987) (right to trial by jury); *State* v. *Williams*, 203 Conn. 159, 166–67, 523 A.2d 1284 (1987) (right to conflict-free representation). A trial court's duty of independent inquiry, however, arises in situations implicating the fundamental fairness of the proceedings and the defendant's core constitutional trial rights.

satisfy his burden of showing relevance, the defendant submitted to the trial court a motion in limine requesting permission to cross-examine the victim and her father in the presence of the jury. The defendant's offer of proof was, on its face, deficient in various respects. First, the defendant's offer of proof did not allege facts that would support a finding either that the prior allegation of sexual assault had been made by the victim or that the prior accusation was false. The offer of proof contained no statement that the victim was the source of her father's belief that she had been sexually assaulted in 1990. Furthermore, as a factual basis for the claim of falsity, the offer of proof represented only that the Worcester police had found no record of such a complaint. Without a further statement by a member of the Worcester police, the offer of proof provided the trial court no basis for determining whether the absence of such a record indicated that the victim had made no such complaint. Furthermore, even if we assume, arguendo, that no investigation had occurred, the trial court reasonably could reject the inference that the victim had not been sexually assaulted at an earlier time. Thus, the defendant's assertions in his offer of proof were too speculative to require a determination that the victim had made prior false statements to her father regarding a previous sexual assault.

For many of the same reasons, the trial court also acted within its discretion in disallowing cross-examination of the victim's father to demonstrate that the

We never have held that a trial court has an independent obligation to order, sua sponte, a hearing on an evidentiary matter, in the absence of both a request for a hearing and an adequate offer of proof.

Finally, we disagree with the suggestion in Justice McDonald's dissenting opinion that § 54-86f, which was not cited to the trial court, requires such a sua sponte hearing in this case. We never have held so. The issue now before us does not raise any question about the manner in which the hearing should have been conducted, if the defendant had made a proper request for one.

victim had made false statements to a constancy of accusation witness about the existence of a prior sexual assault investigation.[15] Again, the defendant's offer of proof did not allege facts that, if proven, would have demonstrated relevance. As stated previously, the offer of proof did not contain facts indicating that the victim was the source of her father's belief that there had been such an investigation. Furthermore, the offer of proof stated merely that the Worcester police had no record of such an investigation at the time of trial, not that the victim never had made such a complaint.

Even if the facts that were offered indicated that the victim had lied to her father about the existence of a prior sexual assault investigation, the trial court reasonably could have concluded that the victim's prior false statement was of limited probative value in assessing her credibility in this case. Even if we were to assume, arguendo, that the rape shield statute did not bar the proffered evidence, the trial court acted within its discretion in excluding the evidence under the general evidentiary rules governing impeachment by prior misconduct. See C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 7.22.2, pp. 204–205. The trial court reasonably could have concluded that the claimed events were remote in time, had minimal bearing on the victim's credibility and would have injected a collateral issue into the trial. See, e.g., State v. James, 211 Conn. 555, 571–72, 560 A.2d 426 (1989). Specifically, the factual circumstances of the prior alleged sexual assault, which may well have been a "date rape," were far

---

[15] In this court, the defendant claimed that he had sought to pursue this line of questioning in order to demonstrate that the victim had lied about the existence of a serious felony investigation, without necessarily revealing that the alleged investigation had involved a sexual assault charge. The defendant's written and oral submissions to the trial court, however, do not present this alternative. Thus, we do not consider whether the trial court would have abused its discretion in disallowing this line of questioning.

removed from the facts of this case. A victim's inaccurate statement to her father about whether she had reported a "date rape" to the police is not necessarily probative of whether that same victim would lie under oath about a sexual assault by a police officer. See, e.g., *United States* v. *Bartlett*, 856 F.2d 1071, 1088 (8th Cir. 1988); *Hughes* v. *Raines*, 641 F.2d 790, 793 (9th Cir. 1981); see also D. Johnson, "Prior False Allegations of Rape: Falsus in Uno, Falsus in Omnibus?," 7 Yale J.L. & Feminism 243 (1995).

"The trial court has wide discretion to determine the relevancy of evidence and the scope of cross-examination. Every reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion." *State* v. *Barnes*, 232 Conn. 740, 746–47, 657 A.2d 611 (1995); see also *State* v. *Kelley*, supra, 229 Conn. 563. Accordingly, in light of the insufficiency of the defendant's offer of proof to support his claim with respect to the relevancy of the proffered evidence, the trial court did not abuse its discretion in disallowing this line of questioning, and the Appellate Court properly affirmed the judgment of the trial court.

The judgment of the Appellate Court is affirmed.

In this opinion BORDEN and PALMER, Js., concurred.

BERDON, J., dissenting. This is one of those cases in which the defendant, who may very well be innocent, will lose his liberty because of this court's failure to recognize his fundamental constitutional right to cross-examine witnesses and its adherence to the anachronistic rule on constancy of accusation evidence.

In order to appreciate the prejudice to the defendant by not allowing him an opportunity to cross-examine

the alleged victim, K, and her father concerning a prior false statement about a sexual assault investigation by the Worcester, Massachusetts police department, this case must be viewed in the context of the undisputed facts, which are not fully stated by the majority. The credibility of K, of course, was of vital importance in this case. The defendant, John W. Sullivan, then an officer with the Massachusetts state police, went to the apartment of K, his wife's cousin, on July 1, 1992. K, a part-time exotic dancer and bookkeeper who used marijuana, cocaine and heroin, showed the defendant a collection of professional photographs taken of her in the nude. Later that day, the defendant and K went to a nudist resort located in Woodstock, Connecticut, where they had sexual intercourse; this sexual encounter is the basis of the charge of sexual assault in this case. On July 5, 1992, K went to the defendant's home, where K undressed but did not have sexual intercourse with the defendant. K testified that she accompanied the defendant to the resort on July 1, and met him at his home on July 5, because the defendant claimed that she was on a police list of persons to be indicted for telephone solicitation, drug trafficking, criminal racketeering, prostitution and illegal pornography and that he had offered to help her avoid the indictment. On September 17, 1992, more than two months after this sexual encounter, K filed a complaint with the Connecticut state police who subsequently arrested the defendant.

The only evidence to support the conviction of the defendant for the sexual assault of K was the testimony of K and that of nine constancy of accusation witnesses,[1] witnesses who had no personal knowledge of

---

[1] In this case, the jury heard testimony from the following nine constancy of accusation witnesses: K's mother, her father, her boyfriend, her narcotics anonymous sponsor, the recreation director at the nudist resort, and four police officers.

the assault but who testified solely on what was told to them by K. In this case, not only were these nine constancy of accusation witnesses paraded before the jury and allowed to testify based solely upon the hearsay statements of K, but they were also allowed to recite the details of what K had told them about the alleged sexual assault to bolster the state's case.[2] Accordingly, the cross-examination of K and her father, one of the constancy of accusation witnesses, was of vital importance to the defense.

The defendant filed a motion for permission to cross-examine K and her father concerning a prior false statement about a sexual assault investigation by the Worcester police department, which allegation was contained in the father's statement to the Connecticut state police. This motion obviously was filed pursuant to the rape shield statute, General Statutes § 54-86f.[3]

---

[2] The trial in this case was held prior to our decision in *State* v. *Troupe*, 237 Conn. 284, 304–305, 677 A.2d 917 (1996), wherein we held, prospectively, that constancy of accusation witnesses would not be allowed to testify as to the details of the alleged sexual assault.

[3] General Statutes § 54-86f provides: "In any prosecution for sexual assault under sections 53a-70, 53a-70a, and 53a-71 to 53a-73a, inclusive, no evidence of the sexual conduct of the victim may be admissible unless such evidence is (1) offered by the defendant on the issue of whether the defendant was, with respect to the victim, the source of semen, disease, pregnancy or injury, or (2) offered by the defendant on the issue of credibility of the victim, provided the victim has testified on direct examination as to his or her sexual conduct, or (3) any evidence of sexual conduct with the defendant offered by the defendant on the issue of consent by the victim, when consent is raised as a defense by the defendant, or (4) otherwise so relevant and material to a critical issue in the case that excluding it would violate the defendant's constitutional rights. Such evidence shall be admissible only after a hearing on a motion to offer such evidence containing an offer of proof. On motion of either party the court may order such hearing held in camera, subject to the provisions of section 51-164x. If the proceeding is a trial with a jury, such hearing shall be held in the absence of the jury. If, after hearing, the court finds that the evidence meets the requirements of this section and that the probative value of the evidence outweighs its prejudicial effect on the victim, the court may grant the motion. The testimony of the defendant during a hearing on a motion to offer evidence under

I set forth the motion in its entirety, together with the attached exhibit and oral argument of trial counsel, because it is important that the defendant's entire representation be reviewed. The motion provides: "Now comes the defendant in the above-entitled matter and moves that this Honorable Court allow defense counsel to cross-examin[e] the complaining victim and her father with respect to a prior allegation of rape . . . which the father claims was under investigation by the Worcester Police Department. Discussions with members of the Worcester Sexual Assault unit disclosed that th[ere] was never [a] complain[t] made by [K] with respect to another rape. This evidence is relevant and material to the impeachment of [K's] and [her father's] credibility." Attached to the motion was a letter from Lieutenant William P. O'Connor, a member of the sexual assault unit of the Worcester police department, on official stationery, which stated: "There are no reports on file in the Worcester Police Department pertaining to [K]."

In argument before the court on the motion, trial counsel for the defendant stated: "And the other matter, Your Honor, is a motion in limine with respect to my cross-examining both [K] and also her father with respect to prior rape allegations in a statement that was given to the Connecticut state police by [K's constancy of accusation witness], that is [K's] father. He alleges that [K] had been raped in the past by a young man who was working for Rob Roy's, which is a hair salon in Worcester, and that that particular matter was brought to the attention of the Worcester police department and that particular incident was under investigation by the Worcester police. We have had contact with

this section may not be used against the defendant during the trial if such motion is denied, except that such testimony may be admissible to impeach the credibility of the defendant if the defendant elects to testify as part of the defense."

the Worcester police. I believe it was Lieutenant O'Connor who heads the sexual assault unit in Worcester and there was no investigation. *There was no report of a rape [of K] in this particular case . . . Your Honor. And we would seek to cross-examine on that matter because it goes to the credibility of both [K] and also [her father].*" (Emphasis added.) Trial counsel pointed out that in the father's statement to the police, he stated the following: " '[K] was also raped in Worcester, Massachusetts, back in 1990, at a park. A black male that she went to school with raped her. Worcester police handled the investigation.' " A fair reading of both the motion and the argument of trial counsel inescapably leads to the conclusion that K lied to her father that she had made a previous complaint about being raped by a black male, or that the father had lied to the police, or that they both had lied.

The trial court denied the defendant's motion, not on the basis that the defendant failed to make an adequate offer of proof or that he failed to satisfy the rape shield statute, but because it was not relevant.

I

As a preliminary matter, I address whether the rape shield statute is applicable, as the majority claims, to the alleged false statement made by K and/or her father about the investigation of the prior alleged sexual assault. The majority asserts that evidence of a claimant's prior false statement concerning a nonexistent investigation of an alleged sexual assault falls under the rape shield statute because it involves the sexual conduct of the claimant. I disagree for several reasons. First, the term conduct, by definition, refers to "a mode or standard of personal behavior esp[ecially] as based on moral principles . . . [or] behavior in a particular situation or relation or on a specified occasion . . . ." Webster's Third New International Dictionary. In the

present case, the defendant neither sought to prove K's sexual lifestyle, nor did he intend to address K's sexual behavior in a particular situation. The defendant merely sought to question K and her father about a prior false statement concerning a nonexistent police investigation of a sexual assault.

Second, questioning K and her father about K's and/ or her father's prior false statement concerning the noninvestigation of an alleged sexual assault does not contravene the purposes of the rape shield statute. Section 54-86f was enacted by our legislature to promote the following purposes: "protecting the victim's sexual privacy and shielding her from undue harassment . . . and enabling the victim to testify in court with less fear of embarrassment." *State* v. *Cassidy*, 3 Conn. App. 374, 379, 489 A.2d 386, cert. denied, 196 Conn. 803, 492 A.2d 1239 (1985). Clearly, K's sexual privacy would not be violated, nor would she be subject to undue harassment if she had to answer questions about a false statement she allegedly made to her father. See H. Galvin, "Shielding Rape Victims in the State and Federal Courts: A Proposal for the Second Decade," 70 Minn. L. Rev. 763, 862 (1986) ("proof of prior false allegations of rape will almost never require the introduction of sexual conduct evidence"); 23 C. Wright & K. Graham, Federal Practice and Procedure (1980) § 5384, pp. 546–47, and n. 63 (prior false accusations of rape "ought to be excluded from the definition of 'sexual behavior' " in rule 412 of Federal Rules of Evidence [rape shield]).

Third, other jurisdictions hold that the victim's false allegations of sexual assault, not just the victim's prior false statements about assault investigations, do not fall within their rape shield statutes. See, e.g., *United States* v. *Stamper*, 766 F. Sup. 1396 (W.D.N.C. 1991), aff'd without published opinion sub nom. *In re One Female Juvenile Victim*, 959 F.2d 231 (4th Cir. 1992); *Covington* v. *State*, 703 P.2d 436 (Alaska App.), aff'd in

part, 711 P.2d 1183 (Alaska 1985); *West* v. *State*, 290 Ark. 329, 719 S.W.2d 684 (1986); *People* v. *Adams*, 198 Cal. App. 3d 10, 243 Cal. Rptr. 580 (1988); *Smith* v. *State*, 259 Ga. 135, 377 S.E.2d 158 (1989); *State* v. *Barber*, 13 Kan. App. 2d 224, 766 P.2d 1288 (1989); *Cox* v. *State*, 51 Md. App. 271, 443 A.2d 607 (1982), aff'd, 298 Md. 173, 468 A.2d 319 (1983); *Commonwealth* v. *Bohannon*, 376 Mass. 90, 378 N.E.2d 987 (1978); *People* v. *Hackett*, 421 Mich. 338, 365 N.W.2d 120 (1984); *People* v. *Garvie*, 148 Mich. App. 444, 384 N.W.2d 796, appeal denied, 426 Mich. 851 (1986); *State* v. *Anderson*, 211 Mont. 272, 686 P.2d 193 (1984); *Miller* v. *State*, 105 Nev. 497, 779 P.2d 87 (1989); *People* v. *Mandel*, 61 App. Div. 2d 563, 403 N.Y.S.2d 63 (1978), rev'd on other grounds, 48 N.Y.2d 952, 401 N.E.2d 185, 425 N.Y.S.2d 63 (1979), cert. denied and appeal dismissed, 446 U.S. 949, 100 S. Ct. 2913, 64 L. Ed. 2d 805 (1980); *State* v. *Durham*, 74 N.C. App. 159, 327 S.E.2d 920 (1985); *State* v. *Baron*, 58 N.C. App. 150, 292 S.E.2d 741 (1982); *State* v. *Boggs*, 63 Ohio St. 3d 418, 588 N.E.2d 813 (1992); *State* v. *LeClair*, 83 Or. App. 121, 730 P.2d 609 (1986); *Clinebell* v. *Commonwealth*, 235 Va. 319, 368 S.E.2d 263 (1988); *State* v. *Carver*, 37 Wash. App. 122, 678 P.2d 842, review denied, 101 Wash. 2d 1019 (1984); *State* v. *Quinn*, 200 W. Va. 432, 490 S.E.2d 34 (1997).

Because K's prior alleged false statement concerning the noninvestigation by the Worcester police department of an alleged sexual assault does not fit within the phrase "sexual conduct," § 54-86f is not relevant to the inquiry before us. In other words, the trial court was not bound in the exercise of its discretion by § 54-86f, but, rather, by our evidentiary rules regarding impeachment of a witness by specific acts of misconduct.[4] "[I]n attacking a witness' credibility, inquiry may

---

[4] The majority asserts that applying impeachment evidence rules to this case would "eviscerate the prophylactic function" of § 54-86f. I disagree because—as I have previously pointed out—cross-examination of a com-

be made, in the discretion of the trial court, as to particular acts of misconduct tending to show a lack of veracity, even though such evidence might be irrelevant to the issues in the case." *State* v. *Dolphin*, 195 Conn. 444, 459, 488 A.2d 812 (1985); *Martyn* v. *Donlin*, 151 Conn. 402, 408, 198 A.2d 700 (1964); *Vogel* v. *Sylvester*, 148 Conn. 666, 675, 174 A.2d 122 (1961); *Shailer* v. *Bullock*, 78 Conn. 65, 69, 61 A. 65 (1905). Under these rules, I would find that the trial court abused its discretion by denying the defendant's motion. Indeed, most jurisdictions that have considered the issue of impeachment of complaining witnesses have held that evidence of prior false accusations is admissible to impeach the complainant's credibility.[5] See *Covington* v. *State*, supra, 703 P.2d 442; *People* v. *Simbolo*, 188 Colo. 49, 52, 532 P.2d 962 (1975); *State* v. *Schwartzmiller*, 107 Idaho 89, 92, 685 P.2d 830 (1984); *People* v. *Gorney*, 107 Ill. 2d 53, 58–61, 481 N.E.2d 673 (1985); *Little* v. *State*, 413 N.E.2d 639, 643 (Ind. App. 1980); *Commonwealth* v. *Bohannon*, supra, 376 Mass. 94; *People* v. *Garvie*, supra, 148 Mich. App. 448; *State* v. *Caswell*, 320 N.W.2d 417, 419 (Minn. 1982); *State* v. *Johnson*, 102 N.M. 110, 117–18, 692 P.2d 35 (App. 1984); *State* v. *Kringstad*, 353 N.W.2d 302, 311 (N.D. 1984); *State* v. *Boggs*, supra, 63 Ohio St. 3d 421; *State* v. *McCarthy*, 446 A.2d 1034, 1034–35 (R.I. 1982); *Thomas* v. *State*, 669 S.W.2d 420, 423 (Tex. App. 1984); *Clinebell* v. *Commonwealth*,

---

plaintant concerning prior false statements about a sexual assault investigation does not implicate the sexual conduct of the complainant.

[5] The majority argues that the trial court acted within its discretion in excluding the cross-examination of K under general evidentiary rules governing impeachment by prior misconduct because the prior incident in Worcester "may well have been a 'date rape' " and, as such, was "far removed from the facts of this case." I find this reasoning without foundation and illogical. First, there is no evidence in the record that would indicate that the prior incident was a "date rape." Second, I fail to understand the majority's distinction between a "date rape" and other sexual assaults. Whether a sexual assault occurs on a date or otherwise, it is still a sexual assault. Third, any false allegation necessarily reflects on the complainant's credibility.

supra, 235 Va. 325; see also H. Galvin, supra, 70 Minn. L. Rev. 858 ("[o]ne would be hard-pressed to dispute the high probative value of evidence that on [a] previous [occasion] the complainant had made false allegations of rape").

## II

Even if the rape shield statute applied to the inquiry sought by the defendant, I would come to the same conclusion that a new trial is required. The majority incorrectly refuses to review the defendant's claim with respect to his right to cross-examine K and her father within the contours of the defendant's right of confrontation pursuant to the sixth amendment to the United States constitution because it claims the constitutional issue was not briefed.[6] The majority is incorrect that the defendant's sixth amendment rights were not raised and briefed before this court.[7] Even if it were true that

---

[6] See footnote 7 of the majority opinion.

[7] The defendant claims in his brief to this court that "there are two standards for relevance [of the cross-examination]—a narrow one which applies until the minimum Constitutional standards for cross-examination have been satisfied and a more broad one which applies thereafter." The defendant then cited to Justice Berdon's dissent in *State* v. *Beliveau*, 237 Conn. 576, 604–605, 678 A.2d 924 (1996), which included the following discussion of the trial court's discretion: "This discretion that [this court] attributes to the trial court stands the sixth amendment to the United States constitution on its head. Indeed, we have held that the trial court's discretion arises . . . only after the defendant has been permitted cross-examination . . . sufficient to satisfy the sixth amendment. . . . Furthermore, until such time as the defendant's constitutional right to confrontation has been satisfied, the trial court has a narrow and clearly defined scope of discretion to determine the relevancy of evidence. [T]he test of relevancy is not whether the answer sought will elucidate any of the main issues, but whether it will to a useful extent aid the court or jury in appraising the credibility of the witness and assessing the probative value of the direct testimony. McCormick, Evidence (2d Ed.) § 29; see *Brown* v. *United States*, 409 A.2d 1093, 1099 (D.C. App. 1979) (rape case). *State* v. *Ouellette*, 190 Conn. 84, 102, 459 A.2d 1005 (1983). Under these circumstances, any plausible basis put forth for such cross-examination satisfies the relevance requirement. See *State* v. *Barnes*, 232 Conn. 740, 747, 657 A.2d 611 (1995)." (Citations omitted; internal quotation marks omitted.)

the defendant failed to raise the constitutional claim, it simply is impossible to determine whether the trial court abused its discretion in not allowing the cross-examination without reference to the defendant's constitutional right. The sixth amendment establishes the floor below which the court cannot tread in order to protect the defendant's basic constitutional right of confrontation. Although this court has held that a trial court is allowed " 'wide discretion to determine the relevancy of evidence and the scope of cross-examination' "; *State* v. *Bova*, 240 Conn. 210, 219, 690 A.2d 1370 (1997); "[that] discretion comes into play . . . only after the defendant has been permitted cross-examination sufficient to satisfy the sixth amendment." *State* v. *Vitale*, 197 Conn. 396, 402, 497 A.2d 956 (1985); *State* v. *Colton*, 227 Conn. 231, 248, 630 A.2d 577 (1993), on appeal after remand, 234 Conn. 683, 663 A.2d 339 (1995), cert. denied, 516 U.S. 1140, 116 S. Ct. 972, 133 L. Ed. 2d 892 (1996); *State* v. *Castro*, 196 Conn. 421, 424, 493 A.2d 223 (1985); *State* v. *Gaynor*, 182 Conn. 501, 508, 438 A.2d 749 (1980). If the answers sought by the defendant through his proffered cross-examination would have " 'aid[ed] the court [and the] jury in appraising the credibility of the [two] witness[es] and assessing the probative value of the[ir] direct testimony . . .' McCormick, Evidence (2d Ed.) § 29; see *Brown* v. *United States*, 409 A.2d 1093, 1099 (D.C. App. 1979) (rape case)"; *State* v. *Ouellette*, 190 Conn. 84, 102, 459 A.2d 1005 (1983); the trial court was required under the sixth amendment to have granted the defendant's motion, and allowed such cross-examination.

Accordingly, I begin my analysis of the trial court's denial of the defendant's motion with a review of established federal constitutional principles relative to the right to cross-examine adverse witnesses. "Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested." *Davis* v. *Alaska*, 415 U.S. 308, 316, 94 S. Ct. 1105, 39 L.

Ed. 2d 347 (1974). "The confrontation clause of the sixth amendment [to the United States constitution] requires that the defendant be accorded some irreducible minimum of cross-examination into matters affecting the reliability and credibility of the state's witnesses." *State* v. *Ortiz*, 198 Conn. 220, 224, 502 A.2d 400 (1985). "In order to comport with the constitutional standards embodied in the confrontation clause, the trial court must allow a defendant to expose to the jury facts from which [the] jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness. *Davis* v. *Alaska*, [supra, 318]; *State* v. *Lubesky*, [195 Conn. 475, 482, 488 A.2d 1239 (1985)]. *State* v. *Arline*, 223 Conn. 52, 60, 612 A.2d 755 (1992). . . . *State* v. *Santiago*, [224 Conn. 325, 331, 618 A.2d 32 (1992)]." (Internal quotation marks omitted.) *State* v. *Barnes*, 232 Conn. 740, 746, 657 A.2d 611 (1995); see *State* v. *LeClair*, supra, 83 Or. App. 130 (confrontation clause requires trial courts to permit defendant to cross-examine complaining witness about alleged prior false allegations of sexual assault if defendant can prove: "[1] complainant has recanted them; [2] . . . those accusations were false; or [3] there is some evidence that the victim has made prior accusations that were false, unless the probative value of the evidence which the defendant seeks to elicit on the cross-examination . . . is substantially outweighed by the risk of prejudice, confusion, embarrassment or delay").

Notwithstanding the constitutional standards embodied in the confrontation clause, the majority holds for the first time, that, pursuant to § 54-86f, a defendant in a sexual assault case is not entitled automatically to an evidentiary hearing outside the presence of the jury to examine the claimant concerning an alleged prior false statement in order to determine whether such cross-examination offends the statute. Instead, according to the majority, the defendant's entitlement to a hearing is dependent on his ability to make an adequate showing

in an offer of proof "that, in fact, the prior [statement concerning the investigation by the Worcester police] was: (1) made by the victim; and (2) false."

The majority's holding on this issue of first impression for this court is based entirely on the Appellate Court's decision in *State* v. *Manini*, 38 Conn. App. 100, 113–14, 659 A.2d 196, cert. denied, 234 Conn. 920, 661 A.2d 99 (1995), in which the Appellate Court, on the basis of "the language of § 54-86f and on the reasoning of the sibling state decisions" adopted the same rule with respect to defense motions to cross-examine complainants in sexual assault cases. The Appellate Court decision is incorrect because that court misinterpreted the clear language of § 54-86f, and it relied on clearly distinguishable decisions of the Idaho Court of Appeals; *State* v. *Gabrielson*, 109 Idaho 507, 708 P.2d 912 (App. 1985); *State* v. *Palin*, 106 Idaho 70, 675 P.2d 49 (App. 1983); and the New Mexico Court of Appeals. *State* v. *Herrera*, 92 N.M. 7, 582 P.2d 384 (App. 1978). Pursuant to § 54-86f, evidence that is so "relevant and material to a critical issue in the case that excluding it would violate the defendant's constitutional rights . . . shall be admissible only after *a hearing on a motion to offer such evidence* containing an offer of proof. . . . If, *after hearing*, the court finds that the evidence meets the requirements of [§ 54-86f] and that the probative value of the evidence outweighs its prejudicial effect on the victim, the court may grant the motion." (Emphasis added.) In my view, once the defendant has established the relevance of his proposed inquiry through one of the three recognized methods in this state, § 54-86f requires that the trial court hold an evidentiary hearing outside the presence of the jury, "either before trial or during trial, to determine if the probative value of the evidence is outweighed by its prejudicial effect on the victim." C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 2.2.4, p. 17. The trial court has discretion only to

grant or to deny a defendant's motion to cross-examine after the evidentiary hearing is completed. Indeed, "[i]n all the cases previously decided [by the appellate courts of this state], where a defendant moved to introduce evidence of the victim's prior sexual conduct, the trial court [held] an evidentiary hearing to determine the admissibility of the [proffered] evidence. *State* v. *Christiano*, [228 Conn. 456, 637 A.2d 382, cert. denied, 513 U.S. 821, 115 S. Ct. 83, 130 L. Ed. 2d 36 (1994)]; *State* v. *Rinaldi*, 220 Conn. 345, 599 A.2d 1 (1991); *State* v. *Kelly*, 208 Conn. 365, 545 A.2d 1048 (1988); *State* v. *Siering*, 35 Conn. App. 173, 644 A.2d 958, cert. denied, 231 Conn. 914, 648 A.2d 158 (1994); *State* v. *Kindrick*, 30 Conn. App. 56, 619 A.2d 1 (1993); *State* v. *Williams*, 20 Conn. App. 263, 565 A.2d 1365 (1989); *State* v. *Butler*, 11 Conn. App. 673, 529 A.2d 219, cert. denied, 205 Conn. 806, 531 A.2d 938 (1987); *State* v. *Daniels*, 8 Conn. App. 190, 512 A.2d 936 (1986); *State* v. *Jones*, 8 Conn. App. 44, 510 A.2d 467 (1986)." *State* v. *Manini*, supra, 110–11. For example, in *Rinaldi*, the trial court allowed the defendant to examine, outside the presence of the jury, the complainant's friend concerning whether the complainant had engaged in sexual intercourse with someone other than the defendant on the night of the alleged sexual assault. *State* v. *Rinaldi*, supra, 351–52. Moreover, in *Kelly*, the trial court allowed the defendant to question the complainant about a prior sexual assault; *State* v. *Kelly*, supra, 373; and, in *Siering*, in what the Appellate Court referred to as the "statutorily mandated hearing," the defendant examined the complainant about sexual intercourse she had engaged in one day prior to the alleged sexual assault. *State* v. *Siering*, supra, 177.

The decisions of the Idaho Court of Appeals and the New Mexico Court of Appeals that the Appellate Court relied on in *Manini*, are distinguishable on important procedural grounds. First, Idaho and New Mexico allow

for pretrial discovery in criminal cases. In fact, the defendant in *Herrera* was appealing the trial court's decision to prohibit him from asking the victim questions, in a pretrial deposition, concerning her prior sexual conduct. *State* v. *Herrera,* supra, 92 N.M. 13. In *Gabrielson,* Justice Bistline, in a concurring and dissenting opinion, pointed out that the state argued in its appellate brief that the defendant should not have been allowed to inquire about the complainant's sexual conduct in an evidentiary hearing because he had the opportunity to take a pretrial deposition of the complainant.[8] *State* v. *Gabrielson,* supra, 109 Idaho 512. Second, in *State* v. *Palin,* supra, 106 Idaho 72, the Idaho Court of Appeals' decision to uphold the trial court's denial of the defendant's proposed inquiry into the complainant's "unchaste conduct" to prove consent was based on general evidentiary principles, not on the rape shield statute.[9]

---

[8] " 'Upon written request of the defendant the prosecuting attorney shall furnish to the defendant a written list of the names and addresses of all persons having knowledge of relevant facts who may be called by the state as witnesses at the trial, together with any record of prior felony convictions of any such person which is within the knowledge of the prosecuting attorney. The prosecuting attorney shall also furnish upon written request the statements made by the prosecution witnesses or prospective prosecution witnesses to the prosecuting attorney or his agents or to any official involved in the investigatory process of the case unless a protective order is issued as provided in Rule 16 (k).' " *State* v. *Gabrielson,* supra, 109 Idaho 514, quoting Idaho Criminal Rule 16 (b) (6).

" 'Upon motion of the defendant showing that he has substantial need in the preparation of his case for additional material or information not otherwise covered by this Rule 16 (b), and that he is unable without undue hardship to obtain the substantial equivalent by other means, the court in its discretion may order the additional material or information to be made available to him. The court may, upon the request of any person affected by the order, vacate or modify the order if compliance would be unreasonable or oppressive.' " *State* v. *Gabrielson,* supra, 109 Idaho 514, quoting Idaho Criminal Rule 16 (b) (8).

[9] Furthermore, the Appellate Court in *Manini* placed too much emphasis on language from *State* v. *Gabrielson,* supra, 109 Idaho 510, stating that "[the rape shield statute] was not intended to allow defense counsel to conduct a fishing expedition into the prior sexual conduct of the victim,

The majority's imposition of a strict rule that an evidentiary hearing is no longer automatic once a motion is made under § 54-86f could be justified if this state, like Idaho and New Mexico, allowed criminal defendants to conduct pretrial depositions. But, because this state does not allow criminal defendants to obtain the same pretrial discovery that is available to the state,[10] this new rule unjustifiably places a burden on criminal defendants that, in most instances, will be impossible to meet.

even outside the presence of a jury." (Internal quotation marks omitted.) *State* v. *Manini,* supra, 38 Conn. App. 113. In *Gabrielson,* the defendant admitted that the hearing would be a fishing expedition—that he did not know what he would discover as a result of the examination. *State* v. *Gabrielson,* supra, 510. Clearly, in the present case, an adequate showing was made by the defendant—by introducing the statement of K's father to the Connecticut state police and the letter from the Worcester police department—to take it out of the realm of a fishing expedition.

The Appellate Court in *Manini* also relied on language from *State* v. *Herrera,* supra, 92 N.M. 16, for support, stating that it is up to the defendant to "make a preliminary showing which indicates the relevancy." (Internal quotation marks omitted.) *State* v. *Manini,* supra, 38 Conn. App. 113. This statement, however, must be read in the context of the facts of that case—that is, the defendant wanted to inquire about the minor victim's sexual conduct to show she consented to the act which supported his conviction for statutory rape. Pursuant to the statutory rape statute, however, consent was not a defense. Therefore, the defendant in *Herrera* had failed to establish any relevancy for his proposed inquiry.

[10] The majority fails to appreciate the limits on discovery in criminal cases in Connecticut. Pursuant to Practice Book § 791, now Practice Book (1998 Rev.) § 40-44, and General Statutes § 54-86 (a), the moving party may depose a witness only if he can demonstrate the unavailability of the witness for trial or for a hearing. See *State* v. *Zaporta,* 237 Conn. 58, 65–66 n.7, 676 A.2d 814 (1996); A. Spinella, Connecticut Criminal Procedure (1985) pp. 538–39 ("[n]otwithstanding the evident advantages of a procedure which allows for the discovery of evidence through pre-trial examination of prospective witnesses, the deposition in Connecticut criminal procedure is limited to the preservation rather than the discovery of evidence"). Indeed, "[t]he benefits arising from the availability of a procedure which provides for the oral examination of parties or witnesses before trial are several. In addition to the advantages associated with other discovery devices—such as the prevention of delays, avoidance of surprise at trial, elimination of issues, and facilitation of the trial of the case through better preparation—the deposition can preserve testimony in the event a witness becomes

## III

Even if the majority is correct that some showing is required under the rape shield statute before the defendant is granted an evidentiary hearing outside the presence of the jury in order to demonstrate that he should be allowed to cross-examine the witness before the jury, that showing has been made in this case. The defendant's offer of proof set forth the statement of K's father to the Connecticut state police in which the father had alleged that the Worcester police had investigated a prior sexual assault complaint. The offer of proof also included a letter from Lieutenant O'Connor, a member of the sexual assault unit of the Worcester police department, in which O'Connor represented that no sexual assault complaint was filed with the Worcester police department. From these basic facts, the trial court should have inferred that either K's father, K, or both were lying concerning the nonexistent police investigation. The defendant could not prove to the trial court that K had lied before he cross-examined K and her father, or at the least, had been given the opportunity to conduct a preliminary examination of them outside the presence of the jury, because he had no other way to obtain pretrial information about the false statement. See *State* v. *Chance*, 236 Conn. 31, 61, 671 A.2d 323 (1996) (holding that state's attorney, who "had no occasion, prior to the defendant's trial testimony, to question

unavailable. It can also provide a unique opportunity for preventing perjury by freezing testimony at a time when recollection is freshest in a setting, as contrasted to the responses elicited by written interrogatories, that encourages spontaneity. Moreover, depositions have the advantage of making available in a simple, convenient, and relatively inexpensive way facts which might otherwise not have come to light, as well as providing an opportunity for educating the parties in advance of trial to the real value of their allegations and defenses in circumstances where demeanor evidence can be closely observed. See [2 A.B.A., Standards for Criminal Justice (2d Ed. 1980) c. 11, standard 11-2.1, commentary, p. 11-18] . . . ." (Citation omitted.) A. Spinella, supra, pp. 538–39 n.197.

him under oath about his alleged false statements," should be given opportunity at trial to cross-examine defendant). The majority should recognize, therefore, that because of the restrictions placed on criminal discovery through deposition in Connecticut, the defendant's presentation of his offer of proof and his good faith belief that the evidence is relevant was sufficient to enable him to cross-examine K and her father about the prior false statement, or, at the least, to be allowed to question the witnesses outside the presence of the jury.

I conclude that because the defendant's offer of proof was sufficient to establish the relevance of his proffered cross-examination, the trial court violated his confrontation right under the sixth amendment to the United States constitution. Although the majority attempts to shield its decision from the scrutiny of the constitution, the sixth amendment constitutional right to cross-examination—as I have previously pointed out—is not only implicit in our certified question, but also, it goes to the essence of the issue. In *Davis* v. *Alaska*, supra, 415 U.S. 320, the United States Supreme Court recognized that the defendant's right to examine a witness' motive to fabricate is a critical part of the defendant's right to present evidence on his own behalf, and it outweighs the state's interest "in protecting the confidentiality of a juvenile offender's record . . . ." The court stated that such an interest "cannot require [the] yielding of so vital a constitutional right as the effective cross-examination for bias of an adverse witness." Id. In *Olden* v. *Kentucky*, 488 U.S. 227, 232–33, 109 S. Ct. 480, 102 L. Ed. 2d 513 (1988), the United States Supreme Court reversed the Kentucky Court of Appeals' affirmance of the trial court's refusal to allow the defendant to impeach the sexual assault victim by introducing evidence of the victim's motive to fabricate her claims, which evidence would have also implicated her interracial living arrangement. The court explained in *Olden*

that "[s]peculation as to the effect of [the testimony on] jurors' racial biases cannot justify exclusion of cross-examination with such strong potential to demonstrate the falsity of [the victim's] testimony." Id., 232. In this case, therefore, the burden is on the state to prove that its interests in applying the rape shield statute outweigh the defendant's interest in cross-examining K and her father about a subject with such strong potential to demonstrate the falsity of K's and/or her father's testimony. See *Demers* v. *State*, 209 Conn. 143, 160, 547 A.2d 28 (1988) ("[t]o have deprived the petitioners [pursuant to the rape shield statute] of the ability to present such evidence which was so highly probative, relevant and material to an element of the crime charged would have violated their sixth amendment rights under the United States constitution to confront the witnesses against them").

Accordingly, I would, at the least, remand this case to the trial court to allow for an evidentiary hearing. If the trial court finds that there was sufficient evidence to support the proffered cross-examination, and finds that, subject to and within the context of the requirements of the sixth amendment of the United States constitution, "the probative value of the evidence outweighs its prejudicial effect on the victim"; General Statutes § 54-86f; it should grant the defendant a new trial.[11]

IV

The defendant also argues in this case that if relevant evidence that would impact on the credibility of an

---

[11] "[A] criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness." (Internal quotation marks omitted.) *Delaware* v. *Van Arsdall*, 475 U.S. 673, 680, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986). In the present case,

alleged victim and a constancy of accusation witness is excluded because of the rape shield statute, the constancy of accusation evidence that bolsters the alleged victim's credibility must also be excluded. Although the defendant here did not object to the constancy evidence on that basis, he raises the issue in his brief before this court without objection by the state.[12] Accordingly, I would reach this issue on the basis of the plain error doctrine.[13]

At the time of the defendant's trial in 1995, before this court issued its ruling in *State* v. *Troupe*, 237 Conn. 284, 299–300, 677 A.2d 917 (1996), Connecticut was "one of only five states[14] that continue[d] to permit [constancy of accusation] testimony regarding the details of a sexual assault victim's [out-of-court statements concerning the alleged assault] . . . ." In no other situation do Connecticut courts permit prior consistent statements to be introduced to credit a witness' testimony. C. Tait & J. LaPlante, Connecticut Evidence

a reasonable jury might have received a significantly different impression of K's credibility had the defendant been permitted to pursue his proposed line of cross-examination. The error, therefore, is not harmless.

[12] The defendant argued in his brief that "[i]f there is reliable evidence about [K's] credibility and especially about her relationship to [constancy] of accusation witnesses, and that evidence is inadmissible at trial, should not the [constancy] of accusation testimony also be inadmissible? Here, as in other cases, the defendant can be caught between the [constancy] of accusation doctrine and the Rape Shield Law in such a way that the jury is given the misleading impression that the witness is credible because only the [constancy] of accusation evidence favorable to her is admissible. The jury is never told that she has lied in the past about matters of similar gravity."

[13] Practice Book § 4061, now Practice Book (1998 Rev.) § 60-5, provides in relevant part: "The court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ."

[14] See *Territory* v. *Schilling*, 17 Haw. 249 (1906), overruled in part on other grounds, *Territory* v. *Nishi*, 24 Haw. 677 (1919), and *Territory* v. *Silva*, 27 Haw. 270 (1923); *Commonwealth* v. *Licata*, 412 Mass. 654, 591 N.E.2d 672 (1992); *State* v. *Blohm*, 281 N.W.2d 651 (Minn. 1979); *Johnson* v. *State*, 17 Ohio 593 (1848).

(Sup. 1998) § 11.24.3, p. 246. As this court explained in *Troupe*, the hearsay exception of constancy of accusation was predicated on the discredited and unfounded assumption that because it is "natural for the victim of a sexual assault to complain promptly following the assault"; *State* v. *Troupe*, supra, 300–301; a "victim who does not report the crime cannot be trusted to testify truthfully about the incident." Id., 303. The court further explained in *Troupe* that "there is an enhanced risk that the jury may be unduly swayed by the repeated iteration of the constancy of accusation testimony. Indeed, one commentator has opined that testimony by multiple witnesses about the facts of the victim's complaint may so unfairly bolster the victim's credibility that, in such cases, 'cross-examination of the victim is not a sufficient protection from prejudice.' C. Tait & J. LaPlante, Connecticut Evidence (Sup. 1995) § 11.22.1, p. 196." *State* v. *Troupe*, supra, 303. As a result, the court in *Troupe* concluded that the constancy of accusation doctrine in place at the time of the defendant's trial needed to be trimmed. Id.

Although I concurred in *Troupe* that trimming the constancy rule by prohibiting witnesses from testifying about the details of the alleged assault would reduce the prejudice, I suggested that we continue to allow it only in certain limited circumstances.[15] I also, however,

[15] "In summary, I would limit the rule as follows: (1) constancy evidence would be admissible only if the defendant, either through cross-examination or through direct testimony, asserts that the victim was not in fact sexually assaulted; (2) the complaint must be made within a reasonable time after the alleged assault, or any delay must be reasonably explained; (3) the victim's complaint must be voluntarily made; (4) constancy testimony must be confined, on direct, to the fact that the victim complained, and should not contain details of the complaint, including the identity of the alleged assailant; and (5) the trial judge has discretion to exclude cumulative constancy evidence. Only then would the rule have been trimmed in a manner that does not exceed its purpose, while minimizing the prejudicial impact on the defendant." *State* v. *Troupe*, supra, 237 Conn. 320–21 (*Berdon, J.*, concurring).

pointed out that it is a myth to believe that by instructing the jury that it is allowed to use constancy of accusation evidence only for corroborative purposes that the jury will not misuse the evidence. I wrote: "This court justifies the continuation of the rule in a modified form in part on the ground that constancy evidence is admissible 'only to corroborate the victim's testimony and not for substantive purposes.' As any trial lawyer can attest, prosecutor or defense counsel, this distinction is academic in the real world of criminal trials. It is clear that the prejudicial impact of constancy evidence is not eliminated merely because the trial judge instructs the jury that it is admitted only for corroboration. The distinction between corroborative evidence and substantive evidence has no meaning to the average juror. Constancy of accusation evidence bolsters the victim's courtroom story, rendering it more credible as if there was another witness to the sexual assault. See *Krulewitch* v. *United States*, 336 U.S. 440, 453, 69 S. Ct. 716, 93 L. Ed. 790 (1949) (Jackson, J., concurring) ('[t]he naive assumption that prejudicial effects can be overcome by instructions to the jury . . . all practicing lawyers know to be unmitigated fiction')." *State* v. *Troupe*, supra, 237 Conn. 317 (*Berdon, J.*, concurring).

At least under the circumstances of this case, where the defendant was unable to challenge the credibility of K, but the state was allowed to introduce nine other witnesses who attested to the credibility of K based solely on K's out-of-court statements, and where there was no other evidence to support K's claim of her tardy complaint of sexual assault, the defendant is entitled to a new trial. In other words, in this case, the trial court allowed the testimony of the state's only witness to the sexual assault to be bolstered by nine witnesses who in effect testified before the jury that K was telling the truth. It was plain error for the trial court to allow any constancy of accusation testimony to be introduced when the defendant was not permitted to cross-examine

K with respect to her credibility regarding a false statement about an alleged prior sexual assault.[16] See *Rock v. Arkansas*, 483 U.S. 44, 56, 107 S. Ct. 2704, 97 L. Ed. 2d 37 (1987) ("a State must evaluate whether the interests served by [an evidentiary] rule justify the limitation imposed on the defendant's constitutional right[s]"); *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973) (courts may not apply evidentiary rules, such as the rape shield statute and the constancy of accusation doctrine, "mechanistically to defeat the ends of justice").[17]

Even though the majority will not grant the defendant a new trial as a result of the trial court's restriction of the defendant's cross-examination of K and her father, it should reverse the defendant's conviction on the ground that it was plain error under the circumstances of this case to allow nine constancy of accusation witnesses to bolster the credibility of K.

Accordingly, I dissent.

---

[16] The majority's justification for the continuation of the constancy of accusation hearsay exception in Connecticut puzzles me. The majority concedes that the "doctrine originally was premised on the arguably inaccurate premise that, if a woman had been sexually assaulted, it would be 'natural' for her to confide in others." The majority now seems to justify this exception on the basis that "[i]t remains a powerful weapon in the state's arsenal to secure justice for victims of sexual assaults." But the majority forgets that we need to do justice for all, the accused as well as the accuser. "Sending the innocent to jail, or depriving the guilty of due process, is not a price our Constitution allows us to pay for the legitimate and worthy ambition to protect those already victimized from additional suffering." *Stephens* v. *Miller*, 13 F.3d 998, 1010 (7th Cir. 1994) (Cummings, J., dissenting). If witnesses are going to be allowed to testify about a hearsay complaint of an alleged victim that she was sexually assaulted by the defendant—and in this case there was not one such witness, but nine—then, constitutionally, a defendant should be able to cross-examine the alleged victim about a prior false statement concerning an alleged sexual assault.

[17] The majority fails to appreciate that the only person that can be effectively cross-examined is the alleged victim; it is impossible to cross-examine a constancy of accusation witness with respect to the truth of what the victim told that witness.

MCDONALD, J., dissenting. Here the defendant sought to establish that the complainant had made a false complaint of sexual assault in 1990. He presented a statement from her father representing that she had been sexually assaulted in Worcester, Massachusetts, and that the Worcester police "had handled that investigation," and a letter from the Worcester police indicating that they had no record of such a complaint. He therefore moved, unsuccessfully, to cross-examine the complainant and her father concerning that incident.

It may be true that the trial court might have ruled that the resulting evidence was inadmissible before the jury. What was foreclosed, however, was the defendant's only opportunity to establish from the complainant's father that the complainant was the source of his information, and from the complainant whether she did in fact make a false complaint of sexual assault in 1990.

The majority observes that the defendant should have made a motion for an evidentiary hearing to be held outside the jury's presence. Although the defendant's motion in limine requesting cross-examination was not couched in terms of General Statutes § 54-86f, the rape shield statute, that statute explicitly required that such an inquiry be made outside the presence of the jury.[1] The trial court should have allowed such an inquiry to afford the defendant an adequate opportunity to develop his cross-examination of the state's witnesses. In this manner the record would have ensured that

---

[1] General Statutes § 54-86f provides in relevant part: "Such evidence shall be admissible only after a hearing on a motion to offer such evidence containing an offer of proof. On motion of either party the court may order such hearing held in camera, subject to the provisions of section 51-164x. *If the proceeding is a trial with a jury, such hearing shall be held in the absence of the jury. . . .*" (Emphasis added.) The defendant did not cite the rape shield law. The trial judge, however, referred to it when the defendant presented his motion. After the motion was presented, the trial court asked defense counsel, who was admitted to the Massachusetts bar, if he was familiar with Connecticut's rape shield law.

evidence "so relevant and material . . . that excluding it would violate the defendant's constitutional rights" was not excluded improperly. General Statutes § 54-86f (4); see *State* v. *Kulmac*, 230 Conn. 43, 50–56, 644 A.2d 887 (1994).

With respect to harmfulness of the ruling, I join Justice Berdon's dissent as to the wholesale and detailed "constancy of accusation" evidence. This evidence included the complainant's detailed statement to her father, as well as to the Massachusetts state police and the Connecticut state police, upon which statement the Connecticut police acted. This evidence, offered supposedly only to corroborate her complaint and not as substantive evidence, became substantive. If there was any question about this, the state's attorney made it clear in his final argument. He suggested that the constancy of accusation witnesses believed the complainant. In arguing that the complainant was not crafty, he stated: "You would think—you know—she's hoodwinked the Connecticut state police, the Massachusetts state police—you saw them all march in here yesterday. Friends, relatives—she's not that crafty, ladies and gentlemen."

I respectfully dissent.